**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| N.E. BRIDGE CONTRACTORS, INC. )<br>        **Plaintiff** )<br> )<br>**v.** )<br> )<br>SENTRY SELECT INSURANCE )<br>COMPANY )<br>        **Defendant** ) | **1:21-CV-11354-DLC** |

**AFFIDAVIT OF MICHAEL F. AYLWARD SUBMITTED IN SUPPORT OF
SENTRY SELECT INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Now comes Michael F. Aylward and declares under the pains and penalties of perjuries and of his personal knowledge as follows:

1.    I am counsel for Sentry Select Insurance Company in this litigation.

2.    I  was hired by Sentry Select to respond to a 93A demand letter that N.E. Bridge sent to Sentry Select on May 26, 2021.

3.    On June 25, 2021, I responded to counsel, denying that Sentry Select had acted unreasonably or in violation of Chapters 93A/176D.

4.    Following receipt of my response, N.E. Bridge sued Sentry Select in the Superior Court, which we timely removed to federal court.

5.    In the meantime, N.E. Bridge sued Power Products in the Middlesex County Superior Court on June 10, 2021, claiming that it was entitled to $738,000 in compensation for the period of time that its truck was out of service following the 2019 fire.   A copy of this Complaint is attached as Exhibit A to this Affidavit.

6.    Following removal, I reminded counsel for N.E. Bridge that Sentry Select's had hired a  forensic accountant (Glenn Ricciardelli of Mattson Driscoll D'Amico) and that

Ricciardelli had sent his law firm an e-mail on April 30, 2021 and that it would make more sense to address those questions in an effort to adjust this loss than to litigate N.E. Bridge's 93A claim.

7.    In this April 30, 2021 e-mail Ricciardelli had stated:

*Greetings Brian & Jessica,*

*I hope this communication finds you well. I have reviewed the documents attached to Brian's November 30th e-mail transmittal that was provided in response to our request for information. The documents were limited to the following: A) Monthly Loan Statements from Blue Hills Bank applicable to a $550,000 Commercial Loan for March thru May 2019; B) Monthly Loan Payment Notices from Rockland Trust (who acquired Blue Hills Bank in March 2019) for the same loan for July 2019 thru December 2020; C) a Job Calendar listing the monthly contracts that were active each month for March thru May 2019; and D) a similar Job Calendar listing the monthly contracts that were active each month for July 2019 thru December 2020.*

*I am uncertain of the reason for providing Items A & B, the monthly loan statements. It appears that Items C & D, the Job Calendars, may pertain to our Request #6 Utilization of Equipment. If so, we require a key or legend that provides a description of each piece of equipment reported in the monthly calendars, including but not limited to 30b, 30g, 30n, 30r, 30v, 30y, etc. Additionally, we require the monthly Job Calendars for January 2018 thru February 2019, June 2019, and January thru April 2021.*

*We are unable to opine on your client's loss of use claim based on the limited information that has been produced to date. Therefore, I have taken the liberty of reiterating our request for the information that is pertinent to our evaluation of your client's claim below. In doing so, I crossed-off Item 5, as we understand you are unable to provide a copy of the contract that was in force at the time of the accident.*

*1) Repair Period: It is our understanding that the damaged vehicle returned to service on Wednesday, December 16th, 2020. Please provide a copy of the repair invoice or related documentation confirming that the damaged vehicle was out-of-service for 72-weeks thru December 16th, 2020.*

*2) Fleet of Trucks: Please provide a listing of NE Bridge Contractors' fleet of road-capable under bridge trucks that were available for use during the period of January 2018 thru April 2021, including detail to any additions or deletions to the fleet during this 40-month period.*

*3) Compatible Vehicles: Please advise which vehicles in NE Bridge Contractors' fleet of vehicles is capable of providing compatible services as the Aspen Aerial A-30 that was damaged in the accident.*

*4) Mitigation Efforts: Please provide an explanation as to the steps taken by NE Bridge Contractors to mitigate their loss of use while the damaged Aspen Aerial A-30 was out-of-service.*

*5) CSX Services Agreements: We request copies of Services Agreements that were in force between CSX & NE Bridge Contractors during the 2018 thru 2021 years. According to Stephanie Stevens' affidavit, this appears to represent the original contract #195510 that was consummated on February 8th, 2008, and was renewed on several occasions until August 6th, 2020, when the parties entered into a new contract.*

*6) Utilization of Equipment: We request access to internal records or reports that would allow us to review the utilization of the vehicle that was damaged in the accident, as well as the other vehicles in NE Bridge Contractors' fleet that was capable of providing compatible services as the Aspen Aerial A-30 during the period of January 2018 thru April 2021.*

*7) Billings to CSX: Detail to NE Bridge Contractors' monthly billing to CSX from January 2018 thru April 2021. To date, we have received a single invoice #10/19-2B that was issued to CSX on October 31st, 2019. Additionally, this invoice confirms the billing for the use of a "Hi Rail Aspen Aerials A-30 with Driver" during the end of September thru October 25th, 2019.*

*8) Monthly Revenue by Customer: Detail to NE Bridge Contractors' monthly revenue by customer from January 2018 thru April 2021.*

*9) Annual Financial Results: Copies of NE Bridge Contractors' 2018 thru 2020 annual financial results, including detail to revenue and operating expenses by account.*

*I thank you for your attention to this matter and ask that you please reach out to me with any questions or concerns regarding the information addressed herein. Additionally, we acknowledge our request is comprehensive and we welcome a teleconference with your client in the event it would facilitate the exchange of responses to some of the above inquiries. Lastly, we would be happy to execute a non-disclosure agreement in the event your client is concerned with sharing proprietary information, as long as the terms of the agreement allow us to share our findings with Sentry Select Insurance and their representatives.*

-3-

*Once the requested information has been compiled and is available for distribution I ask that you please arrange to have the information forwarded along. Alternatively, you can use the following link to our encrypted Sharefile site where you can upload ("drag & drop") the electronic files for our access.*

*Respectfully,*
*GR*
*Glenn Ricciardelli*
*CPA, CVA, CFE, CFF | Partner*

8.    Counsel for N.E. Bridge assented to a stay of this insurance litigation which went into effect in August 2021 and lasted until April 14, 2022.

9.    During the time that the stay was in effect, Glenn Ricciardelli made numerous requests to counsel for N.E. Bridge seeking documentation for their $738,000 loss of income claim. Copies of his e-mail requests are attached as Exhibit B to this Affidavit.

10.   In September, counsel for N.E. Bridge finally submitted some documents to Ricciardelli. Unfortunately, the response avoided most of the categories for which documentation had been requested. As Ricciardelli stated in his September 25, 2021 response (Exhibit B-1):

Greetings Brian & Jessica,

I have reviewed the recent response to our request for information and I find it woefully inadequate, as it fails to address the majority of the requested items. Additionally, NE Bridge Contractors is claiming that the loss of use of their Aspen Aerial A-30 resulted in lost income but your response failed to provide any financial information to support such a loss. Therefore, I am reiterating our request for the following information that is pertinent to our evaluation of your client's loss of use claim, while striking Item 5 as we understand you are unable to provide a copy of the contract that was in force at the time of the accident.

1) Repair Period: It is our understanding that the damaged vehicle returned to service on Wednesday, December 16th, 2020. Please provide a copy of the repair invoice or related documentation confirming that the damaged vehicle was out-of-service for 72-weeks thru December 16th, 2020.

2) <u>Fleet of Trucks:</u> Please provide a listing of NE Bridge Contractors' fleet of road-capable under bridge trucks that were available for use during the period of January 2018 thru April 2021, including detail to any additions or deletions to the fleet during this 40-month period.

3) <u>Compatible Vehicles:</u> Please advise which vehicles in NE Bridge Contractors' fleet of vehicles is capable of providing 'compatible services as the Aspen Aerial A-30 that was damaged in the accident.

4) <u>Mitigation Efforts:</u> Please provide an explanation as to the steps taken by NE Bridge Contractors to mitigate their loss of use while the damaged Aspen Aerial A-30 was out-of-service.

5) <u>CSX Service Agreements [request deleted"</u>

6) <u>Utilization of Equipmer it.</u> We request access to irternal records or reports that would allow us to review the utilization of the vehicle that was damaged in the accident, as well as the other vehicles in NE Bridge Contractors' fleet that was capable of providing compatible services as the Aspen Aerial A-30 during the period of January 2018 thru April 2021.

7.   <u>Billings to CSX:</u> Detail to NE Bridge Contractors' monthly billing to CSX from January 2018 thru April 2021. To date, we have received a single invoice #10/19-2B that was issued to CSX on October 31st, 2019. Additionally, this invoice confirms the billing for the use of a "Hi Rail Aspen Aerials A-30 with Driver" during the end of September thru October 25th, 2019.

8)    <u>Monthly Revenue by Customer:</u> Detail to NE Bridge Contractors' monthly revenue by customer from January 2018 thru April 2021.

9)    <u>Annual Financial Results:</u> Copies of NE Bridge Contractors' 2018 thru 2020 annual financial results, including detail to revenue and operating expenses by account.

I thank you for your attention to this matter and ask that you please reach out to me with any questions or concerns regarding the information addressed herein. Additionally, we acknowledge our request is comprehensive and we welcome a teleconference with your client in the event it would facilitate the exchange of responses to some of the above inquiries. Lastly, we would be happy to execute a non-disclosure agreement in the event your client is concerned with sharing proprietary information, as long as the terms of the agreement allow us to share our findings with Sentry Select Insurance and their representatives.

Once the requested information has been compiled and is available for distribution I assume you will arrange to have the information forwarded along. Alternatively, I have provided the following link to our encrypted Sharefile site where you can upload ("drag & drop") the electronic files for our access.

MDD Sharefile Link: https://mdd.sharefile.com/r-rcb5e1a42ac25496b8b37e12c65e8cff2

Respectfully,
GR


**Glenn Ricciardelli**
CPA, CVA, CFE, CFF Partner


11. In response, plaintiff's counsel provided from further information on November 30 but again failed to respond to most of the areas where documentation was requested. As a result, Ricciardelli sent an e-mail on November 30, 2021 (Exhibit B-2)


Greetings Brian & Jessica,

I hope this communication finds you well. I have reviewed the documents attached to Brian's November 30th e-mail transmittal that was provided in response to our request for information. The documents were limited to the following: A) Monthly Loan Statements from Blue Hills Bank applicable to a $550,000 Commercial Loan for March thru May 2019; B) Monthly Loan Payment Notices from Rockland Trust (who acquired Blue Hills Rank in March 2019) for the same loan for July 2019 thru December 2020; C) a Job Calendar listing the monthly contracts that were active each month for March thru May 2019; and D) a similar Job Calendar listing the monthly contracts that were active each month for July 2019 thru December 2020.

I am uncertain of the reason for providing Items A & B, the monthly loan statements. It appears that Items C & D, the Job Calendars, may pertain to our Request #6 Utilization of Equipment. If so, we require a key or legend that provides a description of each piece of equipment reported in the monthly calendars, including but not limited to 30b, 30g, 30n, 30r, 30v, 30y, etc. Additionally, we require the monthly Job Calendars for January 2018 thru February 2019, June 2019, and January thru April 2021.


12. The e-mail also enumerated numerous categories for which no documentary support existed. (Exhibit E-2).

13. Judge Sorokin lifted the stay on April 14, 2022 when it became apparent that voluntary efforts at resolution were not going to succeed.

14. In the absence of this requested documentation, Power Products requested N.E. Bridge's tax returns to see if they supported any loss of income during the 2019-

2020 period; although N.E. Bridge refused to turn over these documents for several months, they were ultimately ordered to produce them to Power Products on April 14, 2022.   A copy of Judge Sarrouf's order is attached as Exhibit C.

15.    Power Products has served a July 22, 2022 summary judgment motion in the underlying case, arguing that N.E. Bridge has failed to document its claimed loss of income and that its tax returns, in fact, show increased income.  A copy of this Motion is attached as Exhibit D to this Affidavit.

16.    Attached to the Motion is an affidavit from Glenn Ricciardelli in which states the following:

5. I am aware of the business income loss claim of New England Bridge Contractors, Inc. in the amount of $739,000 as reflected in the company's answers to interrogatories;

6. I have received copies of the federal tax returns including all schedules for the calendar years 2016, 2017, 2018, 2019, 2020 and 2021 which have been very helpful to assist me in my review and analysis of the lost business income claim of the Plaintiff New England Bridge Contractors, Inc. from which I have drafted a Summary of the 2017 through 2021 Corporate tax returns (Exhibit B);

7. As a result of my review of these records, I cannot ascertain how New England Bridge Contractors Inc. came to the conclusion the company lost $738,000 of business income due to the loss of use of their damaged vehicle while it was out-of-service for a 72-week period ended December 16, 2020;

8. Specially, I found no evidence of any decrease or downturn in New England Bridge Contractors' financial performance during the years following the occurrence (i.e., 2019 & 2020);

9. In my review of the tax returns and schedules, I was able to ascertain that in the calendar year 2019 (the year of the loss) New England Bridge Contractors Inc. reported gross sales of $8,009,163 and gross profit of $3,517,198;

10. In my review of the records, I was able to ascertain that in the calendar year 2020 (the year following the loss) New England Bridge Contractors Inc. reported gross sales of $7,574,730 and gross profit of $3,254,363;

11. In my review of the tax returns from 2016-2021 I have found that in the 2018 calendar year New England Bridge Contractors Inc. posted a ($718,037) net loss, in the calendar year 2019 the company reported net profit of $889,897, in 2020 the company reported net profit of $1,862,062, and in 2021 the company reported net profit of $2,346,057; and

12. Based on my education, training, and experience in review of the financial records afforded to me, and to reasonable degree of financial accounting certainty I cannot find any relationship between the claimed loss of business income of $738,000 to the loss of the use of the subject crane truck that was out of service from July 28, 2019 thru December 16, 2020.


SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS FIRST DAY

OF AUGUST 2022.


*/s/ Michael F. Aylward*

Michael F. Aylward, BBO # 024850
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA  02210-1181
Phone:    (617) 439-7500

# EXHIBIT A

Page 1

| | |
|---|---|
| **From:** | "MacLeod Ben" <Ben.MacLeod@sentry.com> |
| **Date:** | Mon, 28 Jun 2021 09:19:57 -0500 |
| **To:** | "ClaimsMail" <claimsmail@sentry.com> |
| **Subject:** | FW: Civil Action - Power Products Management LLC, Acct. # 2534346 |
| **Attachments:** | NE Bridge Contractors.pdf |

Hello,

I received the email below from the insured this morning.  Can you please reach out for additional info and get the claims process started for them?

Please let know if you need more info.

Thank you,
Ben

**Ben MacLeod, MBA**
Region Manager **|** Direct Writer **-** New England
603-438-7280 CELL | 715-343-3855 FAX
ben.macleod@sentry.com

**Sentry Insurance (A Mutual Company)**



Please note, coverage cannot be bound, terminated, or altered via email or voicemail message. Registered Representative of Sentry Equity Services, Inc. (SESI), member FINRA

**Looking for a smart and secure way to manage your Sentry business insurance?**
We offer you an easy-to-use and secure system that allows you to monitor and pay invoices, request changes, and track claims, all in one place. Learn more. If you already have an online account, log in to sentry.com. If you'd like access, contact me directly or request access online.

**From:** Joe Robert <jrobert@nedda.com>
**Sent:** Monday, June 28, 2021 10:12 AM
**To:** MacLeod Ben <Ben.MacLeod@sentry.com>
**Cc:** Jeffrey Manning <jmanning@nedda.com>
**Subject:** [EXTERNAL] Civil Action

Ben,

Please see the attached civil action that we received last Friday. Can I get a claim number when you obtain it .

Thanks
Joe

S. Nichury 30137
6/25/21

# Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2181 CV01329

N.E. Bridge Contractors, Inc., PLAINTIFF(S),

V.

Power Products Systems, LLC, DEFENDANT(S)



## SUMMONS

THIS SUMMONS IS DIRECTED TO Power Products Systems, LLC . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Middlesex County Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your **signed original** response with the Clerk's Office for Civil Business, Middlesex Court, 200 Trade Center (address), by mail or in person, **AND** County Superior Woburn, MA 01801

   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: 1350 Main Street, Walpole, MA 02081.

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.

N.E. BRIDGE CONTRACTORS, INC.    )
                                 )
            Plaintiff,           )
                                 )
v.                               )
                                 )
POWER PRODUCTS SYSTEMS, LLC,     )
                                 )
            Defendant.           )

## Jurisdiction and Venue

1.      Plaintiff, N.E. Bridge Contractors, Inc. ("NEB") is a Massachusetts corporation with a principal place of business located at 2 Lopes Drive, Norton, Massachusetts 02766.

2.      Defendant, Power Products Systems, LLC. ("Power Products") is a Delaware limited liability company that is registered to do business in Massachusetts, and is located at 90 Baystate Road, Wakefield, Massachusetts.

3.      This Court has jurisdiction over the instant action, as the claims alleged herein present the likelihood of recovery that exceeds $50,000.00.

4.      This Court is the proper venue because the Defendant's principal place of business is in Middlesex County, Massachusetts.

## General Facts

5. In early May 2019, NEB brought its Western Star truck (the "Truck") to Power Products Systems, LLC ("Power Product") to repair and install the Truck's engine (the "Engine").

6. The Truck remained at Power Product's shop for almost ten (10) weeks while Power Products repaired and installed the Engine.

7. On or about July 28, 2019, while en route to a job, the driver of the Truck noticed smoke emanating from the passenger seat. The driver promptly pulled the Truck over and escaped the vehicle. The cabin of the Truck caught fire and emergency services were called.

8. On or about September 12, 2019, all parties involved appeared for a joint forensic investigation. As a result of this investigation, it was determined that Power Product was responsible for the Engine fire.

9. It was determined that during installation of the Engine's starter, Power Product's mechanic failed to install the hold down nut on the stud of the starter head.

10. The truck was out of service for Seventy-Two (72) weeks, and NEB rents the Truck to its customers at a rate of $7,500.00 per week, not including overtime hours. Estimated overtime hours are estimate are $11,000.00 per month or $2,750.00 per week. The total loss of use figure with overtime for the period during which the Truck was out of service is $738,000.00.

11. On several occasions, NEB has requested and demanded that Power Products compensate NEB for the damages which it suffered, including loss of income as a result of Power Products negligent repair work. Power Products has failed and/or refused to compensate NEB for its damages and injuries.

## COUNT I
### Breach of Contract

12. Plaintiff hereby repeats, re-alleges and incorporates the foregoing allegations by reference, as if the same were fully set forth herein.

13.    A Contract existed between Power Products and NEB in which Power Products agreed to repair the NEB's Truck and Engine.

14.    Power Products has breached the Contract by failing to properly repair the Truck and/or replace the Engine.

15.    Power Products' lack of performance under the Contract violated the covenant of good faith and fair dealing implied in all contracts under Massachusetts law.

16.    As a direct and proximate result of Defendant's breach of the Contract, Plaintiff has suffered and continues to suffer harm, damage, injury and costs, in the approximate amount of Seven Hundred Thirty Eight Thousand ($738,000.00) Dollars.

## COUNT II
### Negligence

17.    Plaintiff repeats and incorporates the foregoing allegations by reference if the same was set forth fully herein.

18.    Power Products had an affirmative duty to NEB to use ordinary skill and care in properly diagnosing and repairing NEB's Truck and Engine.

19.    Power Products breached its duty to NEB by failing to use ordinary skill and care, specifically by negligently repairing NEB's Truck and Engine.

20.    As a direct and proximate result of Power Products breach of its duty to NEB, NEB was unable to complete Seventy-Two (72) weeks of jobs that specifically required the Truck.  As a direct and proximate result of Power Products breach of its duty, NEB has suffered severe and substantial harm, injury and damages, and said harm, injury and damages were reasonably foreseeable.

21.    Specifically, but for Power Products negligent repair and failure to properly repair NEB's Engine, NEB would not have suffered any damages, as the Truck would have been

available for use during the Seventy-Two (72) weeks the Truck was out of service and NEB incurred costs, expenses and damages, including, but not limited to, loss of income, and out-of-pocket costs and expenses in the amount of approximately Seven Hundred Thirty Eight ($738,000.00) Thousand Dollars.

WHEREFORE, Plaintiff respectfully requests that this Court:

a) enter Judgment for Plaintiff on each and every count of the Complaint with interest thereon; and

(b) award Plaintiff such other and further monetary and/or equitable relief as this Court deems just and proper.

Respectfully submitted,
N.E. Bridge Contractors, Inc.,
By its Attorneys,

Dated:  June 10, 2021

Alan B. Almeida, Esq.
BBO#013016
Jessica Deratzian, Esq.
BBO # 672754
Brian C. Almeida, Esq.
BBO # 696005
Connor & Hilliard, P.C.
1350 Main Street
Walpole, MA 02081
Telephone (508)734-3007
Facsimile (508)660-2458

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

### AC Actions Involving the State/Municipality *

AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. (A)
AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. (A)
AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. (A)
AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. (A)

### CN Contract/Business Cases

A01 Services, Labor, and Materials (F)
A02 Goods Sold and Delivered (F)
A03 Commercial Paper (F)
A04 Employment Contract (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1 (F)
A06 Insurance Contract (F)
A08 Sale or Lease of Real Estate (F)
A12 Construction Dispute (A)
A14 Interpleader (F)
BA1 Governance, Conduct, Internal Affairs of Entities (A)
BA3 Liability of Shareholders, Directors, Officers, Partners, etc. (A)
BB1 Shareholder Derivative (A)
BB2 Securities Transactions (A)
BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. (A)
BD1 Intellectual Property (A)
BD2 Proprietary Information or Trade Secrets (A)
BG1 Financial Institutions/Funds (A)
BH1 Violation of Antitrust or Trade Regulation Laws (A)
A99 Other Contract/Business Action - Specify (F)

* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

D01 Specific Performance of a Contract (A)
D02 Reach and Apply (F)
D03 Injunction (F)
D04 Reform/ Cancel Instrument (F)
D05 Equitable Replevin (F)
D06 Contribution or Indemnification (F)
D07 Imposition of a Trust (A)
D08 Minority Shareholder's Suit (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting (A)
D11 Enforcement of Restrictive Covenant (F)
D12 Dissolution of a Partnership (F)
D13 Declaratory Judgment, G.L. c. 231A (A)
D14 Dissolution of a Corporation (F)
D99 Other Equity Action (F)

### PA Civil Actions Involving Incarcerated Party †

PA1 Contract Action involving an Incarcerated Party (A)
PB1 Tortious Action involving an Incarcerated Party (A)
PC1 Real Property Action involving an Incarcerated Party (F)
PD1 Equity Action involving an Incarcerated Party (F)
PE1 Administrative Action involving an Incarcerated Party (F)

### TR Torts

B03 Motor Vehicle Negligence - Personal Injury/Property Damage (F)
B04 Other Negligence - Personal Injury/Property Damage (F)
B05 Products Liability (A)
B06 Malpractice - Medical (A)
B07 Malpractice - Other (A)
B08 Wrongful Death - Non-medical (A)
B15 Defamation (A)
B19 Asbestos (A)
B20 Personal Injury - Slip & Fall (F)
B21 Environmental (F)
B22 Employment Discrimination (F)
BE1 Fraud, Business Torts, etc. (A)
B99 Other Tortious Action (F)

### RP Summary Process (Real Property)

S01 Summary Process - Residential (X)
S02 Summary Process - Commercial/ Non-residential (F)

### RP Real Property

C01 Land Taking (F)
C02 Zoning Appeal, G.L. c. 40A (F)
C03 Dispute Concerning Title (F)
C04 Foreclosure of a Mortgage (X)
C05 Condominium Lien & Charges (X)
C99 Other Real Property Action (F)

### MC Miscellaneous Civil Actions

E18 Foreign Discovery Proceeding (X)
E97 Prisoner Habeas Corpus (X)
E22 Lottery Assignment, G.L. c. 10, § 28 (X)

### AB Abuse/Harassment Prevention

E15 Abuse Prevention Petition, G.L. c. 209A (X)
E21 Protection from Harassment, G.L. c. 258E (X)

### AA Administrative Civil Actions

E02 Appeal from Administrative Agency, G.L. c. 30A (X)
E03 Certiorari Action, G.L. c. 249, § 4 (X)
E05 Confirmation of Arbitration Awards (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9 (A)
E07 Mass Antitrust Act, G.L. c. 93, § 8 (X)
E08 Appointment of a Receiver (X)
E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A (A)
E10 Summary Process Appeal (X)
E11 Worker's Compensation (X)
E16 Auto Surcharge Appeal (X)
E17 Civil Rights Act, G.L. c.12, § 11H (A)
E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) (X)
E25 Pleural Registry (Asbestos cases)
E94 Forfeiture, G.L. c. 265, § 56 (X)
E95 Forfeiture, G.L. c. 94C, § 47 (F)
E99 Other Administrative Action (X)
Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B (F)
Z02 Appeal Bond Denial (X)

### SO Sex Offender Review

E12 SDP Commitment, G.L. c. 123A, § 12 (X)
E14 SDP Petition, G.L. c. 123A, § 9(b) (X)

### RC Restricted Civil Actions

E19 Sex Offender Registry, G.L. c. 6, § 178M (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S (X)

## TRANSFER YOUR SELECTION TO THE FACE SHEET

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| | | | ☒ YES    ☐ NO |
| B03 | Motor Vehicle Negligence-Personal Injury | F | |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

SC0001: 1/22/2021                           www.mass.gov/courts                    Date/Time Printed:06-10-2021 11:21:03

# EXHIBIT B-1

**From:** Glenn Ricciardelli <gricciardelli@mdd.com>
**Date:** Friday, September 24, 2021 at 3:17 PM
**To:** Brian Almeida <briana@connhill.com>, Jessica Deratzian <Jessica@connhill.com>
**Cc:** McDonnell Jonathon <Jonathon.McDonnell@sentry.com>, "Aylward, Michael" <MAylward@morrisonmahoney.com>
**Subject:** NE Bridge Contractors v. Sentry Insurance | Accident 07.28.2019 | Case No. 1:21cv11354-LTS | Sentry Claim 57P044899

Greetings Brian & Jessica,

I have reviewed the recent response to our request for information and I find it woefully inadequate, as it fails to address the majority of the requested items.  Additionally, NE Bridge Contractors is claiming that the loss of use of their Aspen Aerial A-30 resulted in lost income but your response failed to provide any financial information to support such a loss.  Therefore, I am reiterating our request for the following information that is pertinent to our evaluation of your client's loss of use claim, while striking Item 5 as we understand you are unable to provide a copy of the contract that was in force at the time of the accident.

1) Repair Period: It is our understanding that the damaged vehicle returned to service on Wednesday, December 16th, 2020.  Please provide a copy of the repair invoice or related documentation confirming that the damaged vehicle was out-of-service for 72-weeks thru December 16th, 2020.

2) Fleet of Trucks: Please provide a listing of NE Bridge Contractors' fleet of road-capable under bridge trucks that were available for use during the period of January 2018 thru April 2021, including detail to any additions or deletions to the fleet during this 40-month period.

3) Compatible Vehicles: Please advise which vehicles in NE Bridge Contractors' fleet of vehicles is capable of providing compatible services as the Aspen Aerial A-30 that was damaged in the accident.

4) Mitigation Efforts: Please provide an explanation as to the steps taken by NE Bridge Contractors to mitigate their loss of use while the damaged Aspen Aerial A-30 was out-of-service.

5) CSX Services Agreements: We request copies of Services Agreements that were in force between CSX & NE Bridge Contractors during the 2018 thru 2021 years.  According to Stephanie Stevens' affidavit, this appears to represent the original contract #195510 that was consummated on February 8th, 2008, and was renewed on several occasions until August 6th, 2020, when the parties entered into a new contract.

6) Utilization of Equipment: We request access to internal records or reports that would allow us to review the utilization of the vehicle that was damaged in the accident, as well as the other vehicles in NE Bridge Contractors' fleet that was capable of providing compatible services as the Aspen Aerial A-30 during the period of January 2018 thru April 2021.

7) Billings to CSX: Detail to NE Bridge Contractors' monthly billing to CSX from January 2018 thru April 2021.  To date, we have received a single invoice #10/19-2B that was issued to CSX on October 31st,

1

2019.  Additionally, this invoice confirms the billing for the use of a "Hi Rail Aspen Aerials A-30 with Driver" during the end of September thru October 25th, 2019.

8) <u>Monthly Revenue by Customer</u>: Detail to NE Bridge Contractors' monthly revenue by customer from January 2018 thru April 2021.

9) <u>Annual Financial Results</u>: Copies of NE Bridge Contractors' 2018 thru 2020 annual financial results, including detail to revenue and operating expenses by account.

I thank you for your attention to this matter and ask that you please reach out to me with any questions or concerns regarding the information addressed herein.  Additionally, we acknowledge our request is comprehensive and we welcome a teleconference with your client in the event it would facilitate the exchange of responses to some of the above inquiries.  Lastly, we would be happy to execute a non-disclosure agreement in the event your client is concerned with sharing proprietary information, as long as the terms of the agreement allow us to share our findings with Sentry Select Insurance and their representatives.

Once the requested information has been compiled and is available for distribution I assume you will arrange to have the information forwarded along.  Alternatively, I have provided the following link to our encrypted Sharefile site where you can upload ("drag & drop") the electronic files for our access.

MDD Sharefile Link: https://mdd.sharefile.com/r-rcb5e1a42ac25496b8b37e12c65e8cff2

Respectfully,
GR


**Glenn Ricciardelli**
CPA, CVA, CFE, CFF  |  Partner




MATSON DRISCOLL & DAMICO LLP
**FORENSIC ACCOUNTANTS**

T:  +1 617.426.1551  F:  +1 617.426.6023  M:  +1 617.549.9993
10 High Street, Suite 1000 • Boston, MA 02110

   

CONFIDENTIALITY NOTICE:
This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain PROPRIETARY, PRIVILEGED or CONFIDENTIAL information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, immediately contact the sender by reply email and destroy all copies of the original message.

Any personal data acquired, processed or maintained by us will be processed and handled in accordance with local data protection requirements. We will process personal data which comes within the scope of the GDPR, in accordance with our Privacy Notice which you can find here.

We try to ensure our communications are free of viruses but do not accept responsibility for any loss or damage that viruses may cause. You should take your own steps to ensure that communications are free of viruses.

MATSON DRISCOLL & DAMICO LLP is a member of MDD International Limited, a global network of independent and autonomous entities that share a commitment to delivering a quality service to clients around the world. Our structure is explained in more detail here.

**From:** Brian Almeida <briana@connhill.com>
**Date:** Wednesday, September 22, 2021 at 10:45 AM
**To:** "Aylward, Michael" <MAylward@morrisonmahoney.com>
**Cc:** Glenn Ricciardelli <gricciardelli@mdd.com>, McDonnell Jonathon <Jonathon.McDonnell@sentry.com>
**Subject:** RE: NEB v. Sentry - Case No. 1:21cv11354-LTS

Michael,

I wanted to provide the following update on this matter.  Mr. Ricciardelli was just forwarded the documents under separate email cover.  I am happy to send them directly to both you and Mr. McDonell as well if that would be desirable.

Very truly yours,

Brian C. Almeida, Esq.
Associate Attorney
Connor & Hilliard, P.C.
1350 Main Street
Walpole MA 02081

Telephone (508)668-4774 x118
Facsimile    (508)660-2458

E-mail: briana@connhill.com
Website: www.connhill.com

This e-mail may contain confidential or privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail and delete this e-mail and all copies and attachments.

**From:** Aylward, Michael [mailto:MAylward@morrisonmahoney.com]
**Sent:** Friday, September 17, 2021 11:37 AM
**To:** Brian Almeida
**Cc:** gricciardelli@mdd.com; McDonnell Jonathon
**Subject:** RE: NEB v. Sentry - Case No. 1:21cv11354-LTS

I am so sorry, Brian but hope you are on the mend.

**From:** Brian Almeida <briana@connhill.com>
**Sent:** Friday, September 17, 2021 11:35 AM
**To:** Aylward, Michael <MAylward@morrisonmahoney.com>
**Cc:** gricciardelli@mdd.com; McDonnell Jonathon <Jonathon.McDonnell@sentry.com>
**Subject:** RE: NEB v. Sentry - Case No. 1:21cv11354-LTS

**External Email**

Michael,

The weekend after our most recent discussion on this case, I tested positive for COVID-19 and therefore delegated the responsibility of getting these documents to Mr. Ricciardelli, as I was forced into quarantine/recovery. You know how the saying goes with respect to delegation.  It has been and still remains my intention to once again provide Mattson

3

Driscoll with the information, and I believe the time granted by the motion to stay is still useful in serving that interest and resolution of the matter generally.

Very truly yours and have a great weekend,

Brian C. Almeida, Esq.
Associate Attorney
Connor & Hilliard, P.C.
1350 Main Street
Walpole MA 02081

Telephone (508)668-4774 x118
Facsimile   (508)660-2458

E-mail: briana@connhill.com
Website: www.connhill.com

This e-mail may contain confidential or privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail and delete this e-mail and all copies and attachments.

**From:** Aylward, Michael [mailto:MAylward@morrisonmahoney.com]
**Sent:** Friday, September 17, 2021 11:29 AM
**To:** Brian Almeida
**Cc:** gricciardelli@mdd.com; McDonnell Jonathon
**Subject:** RE: NEB v. Sentry - Case No. 1:21cv11354-LTS

Brian:

When we agreed to file a motion to stay proceedings for 90 days, our understanding was that you were going to respond to Mr. Ricciardelli's requests for documents so that Sentry could adjust the lost income claim. I am advised by Mr. Ricciardelli that he has not heard from you.   Please advise if it is your intention to provide Mattson Driscoll with this information.  If not, there's no point in staying these proceedings and I'll just move forward with the motion to dismiss that I had referenced earlier.

thanks

**From:** Brian Almeida <briana@connhill.com>
**Sent:** Monday, August 23, 2021 3:45 PM
**To:** Aylward, Michael <MAylward@morrisonmahoney.com>
**Subject:** RE: NEB v. Sentry - Case No. 1:21cv11354-LTS

**\*\*External Email\*\***

Michael,

We are certainly amenable to staying the proceedings. I did not receive your May 24th correspondence nor do any of my colleagues have any record of receiving it. I am unsure what email you refer to where the letter would be attached. In any event, all of the requested damages related information was forwarded to the adjuster (who I believe is named Jonathan?) some time ago. We would likewise be interested in resolving this matter.

Very truly yours,

4

Brian C. Almeida, Esq.
Associate Attorney
Connor & Hilliard, P.C.
1350 Main Street
Walpole MA 02081

Telephone (508)668-4774 x118
Facsimile   (508)660-2458

E-mail: briana@connhill.com
Website: www.connhill.com

This e-mail may contain confidential or privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail and delete this e-mail and all copies and attachments.

**From:** Aylward, Michael [mailto:MAylward@morrisonmahoney.com]
**Sent:** Monday, August 23, 2021 2:42 PM
**To:** Brian Almeida
**Subject:** RE: NEB v. Sentry - Case No. 1:21cv11354-LTS

Thanks, Brian.

Did you receive the May 24, 2021 letter from me to your colleague that I attached to my earlier e-mail?  My recommendation to Sentry would be that we stay proceedings for a few months in the DJ to see if we can't resolve the claim based upon the damages information that Mattson Driscoll was asking for.  Nothing is going to happen for a while in the DJ anyway and this might avoid the unnecessary expense of my filing a motion to dismiss and your having to either contest or file an amended complaint.

I am available to talk if you wish to.

Michael
857 342-0219

**From:** Brian Almeida <briana@connhill.com>
**Sent:** Monday, August 23, 2021 12:42 PM
**To:** Aylward, Michael <MAylward@morrisonmahoney.com>
**Subject:** NEB v. Sentry - Case No. 1:21cv11354-LTS

**External Email**

Attorney Aylward,

I hope this email finds you well. My name is Brian Almeida, and I represent N.E. Bridge Contractors, Inc. in the above-referenced action that was removed to Federal District Court last week.  I wanted to introduce myself, and take the opportunity to reach out to you with respect to where we stand with this matter.  Am I correct in assuming that a motion to stay the proceedings until the conclusion of the underlying state court litigation is in the offing?  In any event, I am largely available at your convenience to discuss this matter and to take any necessary steps with respect to this matter now that it has been removed.

Very truly yours,

Brian C. Almeida, Esq.
Associate Attorney
Connor & Hilliard, P.C.
1350 Main Street
Walpole MA 02081

Telephone (508)668-4774 x118
Facsimile    (508)660-2458

E-mail: briana@connhill.com
Website: www.connhill.com

This e-mail may contain confidential or privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail and delete this e-mail and all copies and attachments.

6

# EXHIBIT B-2

**From:** Glenn Ricciardelli <gricciardelli@mdd.com>
**Date:** Wednesday, December 22, 2021 at 4:23 PM
**To:** Brian Almeida <briana@connhill.com>, Jessica Deratzian <Jessica@connhill.com>
**Cc:** McDonnell Jonathon <Jonathon.McDonnell@sentry.com>, "Aylward, Michael" <MAylward@morrisonmahoney.com>
**Subject:** Re: NE Bridge Contractors v. Sentry Insurance | Accident 07.28.2019 | Case No. 1:21cv11354-LTS | Sentry Claim 57P044899

Greetings Brian & Jessica,

I hope this communication finds you well.  I have reviewed the documents attached to Brian's November 30th e-mail transmittal that was provided in response to our request for information. The documents were limited to the following: A) Monthly Loan Statements from Blue Hills Bank applicable to a $550,000 Commercial Loan for March thru May 2019; B) Monthly Loan Payment Notices from Rockland Trust (who acquired Blue Hills Bank in March 2019) for the same loan for July 2019 thru December 2020; C) a Job Calendar listing the monthly contracts that were active each month for March thru May 2019; and D) a similar Job Calendar listing the monthly contracts that were active each month for July 2019 thru December 2020.

I am uncertain of the reason for providing Items A & B, the monthly loan statements.  It appears that Items C & D, the Job Calendars, may pertain to our Request #6 Utilization of Equipment.  If so, we require a key or legend that provides a description of each piece of equipment reported in the monthly calendars, including but not limited to 30b, 30g, 30n, 30r, 30v, 30y, etc.  Additionally, we require the monthly Job Calendars for January 2018 thru February 2019, June 2019, and January thru April 2021.

We are unable to opine on your client's loss of use claim based on the limited information that has been produced to date.  Therefore, I have taken the liberty of reiterating our request for the information that is pertinent to our evaluation of your client's claim below.  In doing so, I crossed-off Item 5, as we understand you are unable to provide a copy of the contract that was in force at the time of the accident.

1) Repair Period: It is our understanding that the damaged vehicle returned to service on Wednesday, December 16th, 2020.  Please provide a copy of the repair invoice or related documentation confirming that the damaged vehicle was out-of-service for 72-weeks thru December 16th, 2020.

2) Fleet of Trucks: Please provide a listing of NE Bridge Contractors' fleet of road-capable under bridge trucks that were available for use during the period of January 2018 thru April 2021, including detail to any additions or deletions to the fleet during this 40-month period.

3) Compatible Vehicles: Please advise which vehicles in NE Bridge Contractors' fleet of vehicles is capable of providing compatible services as the Aspen Aerial A-30 that was damaged in the accident.

4) Mitigation Efforts: Please provide an explanation as to the steps taken by NE Bridge Contractors to mitigate their loss of use while the damaged Aspen Aerial A-30 was out-of-service.

1

~~5) CSX Services Agreements: We request copies of Services Agreements that were in force between CSX & NE Bridge Contractors during the 2018 thru 2021 years. According to Stephanie Stevens' affidavit, this appears to represent the original contract #195510 that was consummated on February 8th, 2008, and was renewed on several occasions until August 6th, 2020, when the parties entered into a new contract.~~

6) <u>Utilization of Equipment</u>: We request access to internal records or reports that would allow us to review the utilization of the vehicle that was damaged in the accident, as well as the other vehicles in NE Bridge Contractors' fleet that was capable of providing compatible services as the Aspen Aerial A-30 during the period of January 2018 thru April 2021.

7) <u>Billings to CSX</u>: Detail to NE Bridge Contractors' monthly billing to CSX from January 2018 thru April 2021. To date, we have received a single invoice #10/19-2B that was issued to CSX on October 31st, 2019. Additionally, this invoice confirms the billing for the use of a "Hi Rail Aspen Aerials A-30 with Driver" during the end of September thru October 25th, 2019.

8) <u>Monthly Revenue by Customer</u>: Detail to NE Bridge Contractors' monthly revenue by customer from January 2018 thru April 2021.

9) <u>Annual Financial Results</u>: Copies of NE Bridge Contractors' 2018 thru 2020 annual financial results, including detail to revenue and operating expenses by account.

I thank you for your attention to this matter and ask that you please reach out to me with any questions or concerns regarding the information addressed herein. Additionally, we acknowledge our request is comprehensive and we welcome a teleconference with your client in the event it would facilitate the exchange of responses to some of the above inquiries. Lastly, we would be happy to execute a non-disclosure agreement in the event your client is concerned with sharing proprietary information, as long as the terms of the agreement allow us to share our findings with Sentry Select Insurance and their representatives.

Once the requested information has been compiled and is available for distribution I ask that you please arrange to have the information forwarded along. Alternatively, you can use the following link to our encrypted Sharefile site where you can upload ("drag & drop") the electronic files for our access.

MDD Sharefile Link: https://mdd.sharefile.com/r-rcb5e1a42ac25496b8b37e12c65e8cff2

Respectfully,
GR

**Glenn Ricciardelli**
CPA, CVA, CFE, CFF  |  Partner



**MATSON DRISCOLL & DAMICO LLP**
**FORENSIC ACCOUNTANTS**

T:  +1 617.426.1551  F:  +1 617.426.6023  M:  +1 617.549.9993
10 High Street, Suite 1000 · Boston, MA 02110

   > mdd.com

# EXHIBIT C

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COUR DEPARTMENT
CIVIL ACTION NO. 2181CV01329

N.E. BRIDGE CONTRACTORS, INC. )
    Plaintiff, )
            )
            )
v. )
            )
POWER PRODUCTS SYSTEMS, LLC, )
    Defendant. )
            )



FILED
IN THE OFFICE OF THE
CLERK OF THE
FOR THE COURT OF COURTS
THE COUNTY OF MIDDLESEX

APR 1 2 2022

CLERK

## DEFENDANT, POWER PRODUCTS SYSTEMS, LLC'S, MOTION TO COMPEL DISCOVERY RESPONSES (TAX RETURNS) FROM THE PLAINTIFF, N.E. BRIDGE CONTRACTORS, INC.

The Defendant, Power Products Systems, LLC ("Power") moves this Honorable Court pursuant to MRCP Rules 26, 34 and 37 to compel the Plaintiff, N.E. Bridge Contractors, Inc. ("Bridge"), to produce financial documents supporting Bridge's claim for lost business income. In summary, the Plaintiff, Bridge seeks to recover damages for lost business income of $738,000.00 as a result of a fire-damaged commercial crane truck. Bridge claims Power negligently repaired the subject crane truck causing it to be unavailable for use in its construction business. The Defendant has conferred with Plaintiff's counsel in good faith to resolve this discovery dispute.[1] The Defendant incorporates the Memorandum in Support of Defendant, Power Product Systems, LLC's Motion to Compel Discovery Responses (Tax Returns) from the Plaintiff, N.E. Bridge Contractors, Inc. by reference herein.

The Defendant Power, seeks the following relief:

---

[1] On February 11, 2022, the parties conferred pursuant to Superior Court Rule 9C but Plaintiff declined to produce the requested tax returns and supporting financial documents.

# EXHIBIT D

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT DEPT.
                                                 CIVIL ACTION NO.: 2181CV01329

N.E. BRIDGE CONTRACTORS, INC.,
     Plaintiff,

vs.

POWER PRODUCTS SYSTEMS, LLC,
     Defendant.

## DEFENDANT POWER PRODUCTS SYSTEMS, LLC'S MOTION FOR SUMMARY JUDGMENT

Defendant Power Product Systems, LLC ("Power Products") submits this memorandum of law in support of its motion for summary judgment as to the Complaint of NE Bridge Contractors, Inc. ("NE Bridge")

### SUMMARY OF ARGUMENT

Power Products is asking this court to grant summary judgment as to the Plaintiff's claim against Power Products as NE Bridge cannot establish a prima facie case against Power Products for breach of contract as Plaintiff is unable to prove as a matter of law Defendant failed to perform under the service agreement, nor can Plaintiff prove as a matter of law the causal connection between the 7/28/19 fire of Plaintiff's subject crane truck and any act or omission of the Power Products including its last service date of 5/9/19. As Plaintiff cannot demonstrate Defendant failed to perform under the agreement or a causal link between any act or omission of the Defendant and the fire, Plaintiff's case is futile and must be dismissed as a matter of law. Furthermore, Plaintiff cannot causally connect their speculative claimed loss of business income damages of $738,000 damages to this fire event.

1

## I.    FACTUAL BACKGROUND

The plaintiff N.E. Bridge Contractors, Inc. ("N.E. Bridge") is a domestic company with a principal place of business at 2 Lopes Drive, Norton, MA. SOMF #1 The defendant Power Products Systems, LLC ("Power Products") is a domestic company with a principal place of business at 90 Baystate Road, Wakefield, MA engaging in the business of selling and repairing commercial trucks. SOMF # 2, 4. On or about 2019, N.E. Bridge owned a 2019 Western Star Truck (Vin #KT9795) ("subject crane truck") purchased from a third party. SOMF #3. N.E. Bridge does not design, manufacture, or distribute crane trucks, but rather is a service provider for commercial trucks and trucking equipment. SOMF #4. N.E Bridge did not have any preventive maintenance contract with Power Products for the repair and maintenance of any vehicle or equipment. SOMF #5. N.E Bridge did not have any specific contract for the performance of work by Power Products on any of its vehicles in which both parties signed a contracted for expressed repair and maintenance work. SOMF #6.

On October 10. 2018, N.E. Bridge had the Western Star truck towed to Power Products for a repair and installation of an engine. SOMF #7. On October 10, 2018, Power Products performed an initial diagnosis and confirmed a hole in the block. The engine and transmission were removed from the unit and the engine was disassembled. SOMF #6. On or about October 10, 2018, Power Products issued a service invoice for a one-time service repair for the subject crane truck. SOMF #9.

On May 9, 2019, Power Products Systems, LLC completed all repairs to the Western Star Truck. SOMF #10. On or about July 28, 2019, two months and 19 days later, while the Western Truck was being operated, a fire occurred causing damage to the Western Truck. SOMF #11. Answer No. 3. N.E Bridge had sole and exclusive control over the subject crane from when it was produced by Power Products after maintenance was performed on May 9,2019 to July 28,

2

2019 two months and 19 days later when the fire event took place when an N.E. Bridge employee was operating the subject crane truck. SOMF #12. From May 9, 2019 to July 28, 2019, the subject crane truck was driven and utilized by N.E. Bridge during this time period without incident. SOMF #13. On July 28, 2019, N.E. Bridge employee Peter Sealy was operating the subject crane truck when the fire took place. SOMF #14.

On September 12, 2019, a fire inspection was completed by Laurence P. Brandoli who was hired by N.E. Bridge. SOMF #15. Laurence P. Brandoli describes himself as a "Certified Fire Inspector" but provides no Curriculum Vitae as to what his true qualifications are. SOMF #16. Laurence P. Brandoli is not an electrical engineer, not a mechanical engineer, nor an engineer of any recognized discipline. SOMF #17. As a result of this a single inspection Mr. Brandoli authored a one-page report where he comes to the unsupported conclusion that "the outlet on the end of the B+ cable was not replaced or connected resulting in the hot cable not attached back to the battery box" but provides no basis as to why he comes to this conclusion. SOMF #18. In this same report, Mr. Brandoli does not articulate or express an opinion to a reasonable degree of, mechanical engineering certainty, or electrical engineering certainty, the "B+ cable" becoming detached was the responsibility of the Defendant Power Products Systems LLC. SOMF #19. New England Bridge has not disclosed pursuant to Superior Court Rule 30B or provided any other expert opinion of a qualified witness offering an opinion as of to the causal connection between the fire of 7/28/19 and any act or omission of Power Products. N.E. Bridge has alleged a loss of use totaling 72 weeks and $738,000.00. SOMF #21.

Power Products has retained Glen Ricciardelli, certified public accountant to review the financial records including tax returns of the Plaintiff N.E Bridge to assess the claim of loss of

business income of $738,000. SOMF #23. CPA Glen Ricciardelli prepared a second affidavit summarizing his initial opinion as follows:

> "Based on my education, training, and experience in review of the financial records afforded to me, and to reasonable degree of financial accounting certainty I cannot find any relationship between the claimed loss of business income of $738,000 to the loss of the use of the subject crane truck which was out of service in the calendar year of 2019." SOMF #24.

N.E. Bridge has not disclosed any financial expert opinion or witness pursuant to Superior Court Rule 30B linking the property damage to the subject crane truck to the $738,000 claimed business income loss. SOMF #20.

## II.    SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the court looks at the evidence in the light most favorable to the non-moving party to determine whether there is "any combination of circumstances . . . from which a reasonable inference could be drawn in favor of the Plaintiff." Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983) (quoting Poirier v. Plymouth, 374 Mass. 206, 212 (1978)). Reasonable inferences are those based on "probabilities, rather than possibilities" and "not the result of 'mere speculation and conjecture.'" Id. A Plaintiff fails to maintain the burden of proof if all of the evidence in question of the Defendant's negligence is left to conjecture, surmise, or speculation. Morris v. Weene, 258 Mass. 178, 180 (1927); see also Brown v. Bangs, 306 Mass. 551 (1941).

"The purpose of summary judgment is to decide cases where there are no issues of material fact without the needless expense and delay of a trial followed by a directed verdict." Correllas v. Viveiros, 410 Mass. 314, 316 (1991). A moving party's burden may be satisfied by demonstrating that proof of an element of a non-moving party's claim is unlikely to be forthcoming at trial and a

complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 10 Mass. 706, 711 (1991).

### III. ARGUMENT

**A.   Plaintiff Has Failed to Prove a Prima Facie Case of Breach of Contract or Negligence Against Defendant**

### 1. Breach of Contract

In its Complaint, Plaintiff alleges a claim for breach of contract against Defendant Power Products.

> In order to succeed in this claim, the plaintiff must prove each of the following elements by a preponderance of the evidence:
> 1. that there was a valid contract, including proof of the terms of the contract;
> 2. that the plaintiff performed [his/her/its] material obligations under the contract (or because of the conduct of the other party, is excused from performance);
> 3. that the defendant breached or violated the contract; and
> 4. that the plaintiff suffered damages as a result of the breach of contract.
>
> MCLE Superior Court Civil Practice Jury Instructions – Basic Contract Cases § 14.1

As a preliminary matter, there was no contract for preventive or continued maintenance between N.E. Bridge and Power Products. The only agreement between the Plaintiff and Power Products was an authorization for repair work and an express mechanics lien on the truck and to waive liability for loss or damage to articles left with the vehicle or engine in case of fire, theft, or any other cause beyond its control. There are no explicit warranties contained within the agreement and this was not a contract for continued maintenance. Furthermore, Plaintiff does not allege the breach of any express or implied warranties, N.E. Bridge simply alleges lack of performance, thereby violating the covenant of good faith and fair dealing.

> The implied covenant of good faith and fair dealing means that neither party may do anything that will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract.
> ...

5

> The scope of the implied covenant of good faith and fair dealing is only as broad as the contract that governs the particular relationship. There is no requirement that bad faith be shown; instead, the plaintiff has the burden of proving a lack of good faith. The lack of good faith can be inferred from the totality of the circumstances.

MCLE Superior Court Civil Practice Jury Instructions – Basic Contract Cases § 14.3.1

The scope of the covenant of good faith and fair dealing is only as broad as the contract between the parties. T.W. Nickerson, Inc. v. Fleet Nat. Bank, 456 Mass. 562, 570 (2010); see also MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 493 (1st Cir. 2013). "This implied covenant may not be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, but rather concerns the manner of performance." Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385 (2005). The purpose of the covenant of good faith and fair dealing is to ensure "the objectives of the contract may be realized." Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385 (2005). There is a presumption that all parties act in good faith, and the plaintiff bears the burden of presenting evidence of bad faith or an absence of good faith. T.W. Nickerson, Inc. v. Fleet Nat. Bank, 456 Mass. 562, 574 (2010).

Lack of good faith "carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will." Hartford Acc. & Indem. Co. v. Millis Roofing & Sheet Metal, Inc., 11 Mass. App. Ct. 998, 999 (1981); see also Nile v. Nile, 432 Mass. 390, 399 (2000) (Court found lack of good faith where defendant's actions divesting his assets thwarted plaintiff's rights to the fruits of their settlement agreement); T.W. Nickerson, Inc. v. Fleet Nat. Bank, 456 Mass. 562, 574 (2010) (Court found no evidence of improper motive for defendant terminating trust and therefore Plaintiff could not prove defendant lacked good faith); Liss v. Studeny, 450 Mass. 473, 477 (2008) (Defendant did not act in bad faith by refusing to advance additional funds to plaintiff when he was not required to do so under their contract). To prove a lack of good faith requires Plaintiff to show the Defendant took some action or failed

6

to take action and by doing so, thwarted the fruits of their contract. See Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237–38 (1st Cir. 2013) (quoting T.W. Nickerson, Inc. v. Fleet Nat. Bank, 456 Mass. 562, 570 (2010)).

On October 10, 2018, the Western Star Truck was towed to Power Products with a hole in the engine. N.E. Bridge has not disclosed how it damaged the engine, whether through overuse blowing out the engine or whether it was damaged when it was purchased by N.E. Bridge. Power Products removed the engine and transmission and sent the transmission out for repairs. A new engine was ordered and installed by Power Products. On or around May 9, 2019, Power Products released the vehicle back to Plaintiff. Then, 81 days later, a complex fire event occurred, damaging the Plaintiff's vehicle. Under the agreement between Plaintiff and Defendant, Defendant was tasked with replacing the damaged engine. Defendant did replace the damaged engine and returned the vehicle in working order to the Plaintiff, in accordance with the agreement. There is no evidence or testimony conclusively linking Defendant's work on the engine to a fire that occurred nearly 3 months after the vehicle was returned to Plaintiff. Plaintiff cannot claim the fire itself proves a lack of performance by Power Products without some sort of evidence causally linking the Defendant's actions and the fire. Furthermore, the cause of a fire is a highly technical issue requiring expert analysis. Plaintiff has not disclosed any technical expert and cannot point to a single piece of evidence that causally links any act or omission of the Defendant with the fire in the Plaintiff's vehicle, let alone Power Products acted to thwart the purpose of their contract, as required to show lack of good faith.[1] Therefore, Power Products is entitled to summary judgment as a matter of law on the contract claim.

---

[1] The one-page report of a "fire investigator" L. Brandoli, who is neither an electrical engineer nor a mechanical engineer, falls well below the threshold of a genuine expert witness.

## 2. **Negligence**

Plaintiff cannot prove causation as he has no evidence or expert testimony or report to link any act or omission of the Defendant to the 7/28/19 fire in Plaintiff's vehicle. Massachusetts jury instructions on causation are as follows:

> If you decide that the defendant was negligent, you must then consider whether the defendant's negligent conduct [caused/ enhanced] the plaintiff's injuries. Even if you find that the defendant was negligent, the defendant is not liable to the plaintiff unless [its/his/her] negligence caused the plaintiff's harm. The plaintiff is not required to exclude every other possibility of cause for [his/her] injury except that of the negligence of the defendant. To meet [his/her] burden, the plaintiff need only show that there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause.
>
> . . .
> (a) *But-For Causation*
>
> The defendant's conduct was a cause of the plaintiff's harm if the harm would not have occurred absent the defendant's negligence. In other words, if the harm would have happened anyway, the defendant is not liable.
>
> MCLE Superior Court Civil Practice Jury Instructions – Personal Injury § 2.1.9

The Plaintiff bears the burden for demonstrating Defendant's acts or omissions caused the Fire in Plaintiff's vehicle. See Restatement (Second) of Torts § 430 (1965). "It is a bedrock principle of negligence law that a defendant cannot and should not be held liable for a harm unless the defendant caused the harm." Doull v. Foster, 487 Mass. 1, 6–7 (2021); See also Wainwright v. Jackson, 291 Mass. 100, 102 (1935) ("The general rule is that one cannot be held liable for negligent conduct unless it is causally related to injury of the plaintiff"); Glidden v. Maglio, 430 Mass. 694, 696 (2000) ("Causation is an essential element of" proving negligence); Leavitt v. Brockton Hosp., Inc., 454 Mass. 37, 45 (2009) (Liability only attaches when the defendant's actions are the cause in fact of plaintiff's injuries); DaSilva v. Toyota Motor Corp., 474 F. Supp. 3d 448, 458 (D. Mass. 2020) ("One cannot be held liable for negligent conduct unless it is causally related to injury of the plaintiff"). Plaintiff has not introduced any evidence

8

proving Defendant's actions were the cause of the fire in question. Defendant serviced Plaintiff's vehicle and released it back to Plaintiff on 5/9/19. The fire happened on 7/28/19. A complex fire event occurring 81 days after Defendant serviced the vehicle cannot be conclusively linked to Defendant's actions absent some evidence or testimony supporting the link.

Furthermore, Plaintiff has no technical expert providing an opinion in support of Plaintiff's allegations. In cases where liability relies on technical expertise to interpret the evidence available, a Plaintiff fails to prove a prima facie case where there is no disclosed expert. See Nally v. Volkswagen of Am., Inc., 405 Mass. 191, 194, 539 N.E.2d 1017, 1019 (1989) (Plaintiff was precluded from establishing a prima facie case after their expert was excluded, leaving them without a technical motor vehicle expert); Zoning Bd. of Appeals of Holliston v. Hous. Appeals Comm., No. 09 393326 KCL, 2010 WL 2543651, at *6 (Mass. Land Ct. June 24, 2010), aff'd, 80 Mass. App. Ct. 406, 953 N.E.2d 721 (2011) (Plaintiff established a prima facie case through the presentation of expert testimony and documentary evidence); Brotherston v. Putnam Invs., LLC, No. CV 15-13825-WGY, 2017 WL 2634361, at *11 (D. Mass. June 19, 2017), aff'd in part, vacated in part, remanded, 907 F.3d 17 (1st Cir. 2018) (Production of expert reports is sufficient establish a prima facie case); Luceus v. Rhode Island, 923 F.3d 255, 257 (1st Cir. 2019) (technical evidence must be assessed by an expert to establish a prima facie case). This case centers on the cause of a complex fire event occurring 81 days after Defendant serviced the vehicle. Plaintiff has neither disclosed a technical expert nor produced an expert report pursuant to Supreme Court Rule 30B analyzing the complex fire event or causally linking the fire to an act or omission of the Defendant. Mr. L. Brandoli's one page report in which he identified a loose "B+ cable" to the battery box is insufficient as he does not explain in any way how a loose cable found 81 days after the truck was serviced by Power Products could have been

9

caused by Power Products rather than simply loosening on its own or any other reason. Without such expert analysis, Plaintiff fails to establish a prima facie case for negligence.

## B.    Plaintiff's Claim Is Futile

"Summary judgment is a device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved." Cassesso v. Comm'r of Correction, 390 Mass. 419, 422 (1983); see also Ortiz v. Morris, 97 Mass. App. Ct. 358, 361–62 (2020). "The purpose of summary judgment is to decide cases where there are no issues of material fact without the needless expense and delay of a trial followed by a directed verdict." Correllas v. Viveiros, 410 Mass. 314, 316 (1991). Subsequently, when a party's claim is futile, it is contrary to the purpose of summary judgment to allow the litigation to go forward. See Martin v. Stericycle, Inc., 389 F. Supp. 2d 131, 135 (D. Mass. 2005) (Where the Court denied a request to extend discovery prior to summary judgment and granted summary judgment because additional discovery would be futile as additional discovery would not change the facts of the case). "The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial." Doral Country Club, Inc. v. O'Connor, 355 Mass. 27, 30, 242 N.E.2d 425, 427 (1968) (citing Richard v. Credit Suisse, 242 N.Y. 346, 350 (1926)).

It is standard practice in the Commonwealth for courts to dispose of futile claims at any stage of the litigation. See Hayes v. CRGE Foxborough, LLC, 167 F. Supp. 3d 229, 241 (D. Mass. 2016) (Courts will not allow a motion to amend a complaint when the amendment is futile); Marsman v. W. Elec. Co., 719 F. Supp. 1128, 1142 (D. Mass. 1988) (Where proposed amendments to a complaint would not survive a motion to dismiss, despite newly discovered

10

evidence, the motion to amend must be denied on futility grounds). This is such a case. As

Plaintiff cannot prove an essential element of his breach of contract or negligence claim, nor

does he have any facts or expert testimony supporting his breach of contract or negligence claim,

his claim is futile and therefore should be dismissed in accordance to MRCP 56.

**C.    Plaintiff Has Not Causally Linked Their Speculative Damages to Actual Loss of Use of Subject Truck**

Plaintiff claims to have $738,000 Loss of Use damages. See Plaintiff's Complaint

attached as Exhibit A. However, Plaintiff provides no evidentiary support for this number.

Plaintiff did provide tax documents after Defendant moved to compel their production, however,

those tax documents do not support Plaintiff's alleged losses. Defendant's expert forensic

accountant reviewed these documents and determined they contained no support for Plaintiff's

$738,000 damages claim.

> I have received copies of the federal tax returns including all schedules for the calendar years 2016, 2017, 2018, 2019, 2020 and 2021 which have been very helpful to assist me in my review and analysis of the lost business income claim of the Plaintiff New England Bridge Contractors, Inc. from which I have drafted a Summary of the 2017 through 2021 Corporate tax returns (Exhibit B); As a result of my review of these records, I cannot ascertain how New England Bridge Contractors Inc. came to the conclusion the company lost $738,000 of business income. Specially, in my review of the schedules (AAA) I found the following------;In my review of the tax returns and schedules, I was able to ascertain that in the calendar year 2019 (the year of the loss) New England Bridge Contractors Inc posted a gross sales of $8,009,163 and gross profit of $3,517,198; In my review of the records, I was able to ascertain that in the calendar year 2020 (the year after the loss) New England Bridge Contractors Inc posted gross sales of $7,574,730 and gross profit of $3,254,363
>
> In my review of the tax returns from 2016-2021 I have found that in the calendar year 2018 New England Bridge Contractors Inc. posted a $718,037 net loss, in the calendar year 2019 an $889,897net profit, in 2020 a $1,862,000 net profit and in 2021 a $2,346,057.00 net profit; and. Based on my education, training, and experience in review of the financial records afforded to me, and to reasonable degree of financial accounting certainty I cannot find any relationship between the claimed loss of business income of $738,000 to the loss of the use of the subject crane truck which was out of service in the calendar year of 2019.
>
> See second affidavit of CPA Glen Ricciardelli, attached as Exhibit E.

11

Massachusetts Courts do not award loss of business income or loss of use damages without reliable evidentiary support and qualified testimony justifying the amount. See Bala v. AOTec, Inc., No. 9402623A, 1998 WL 1181261, at *1 (Mass. Super. July 8, 1998) (Damages were too speculative as there was no evidentiary support for alleged estimation of value beyond plaintiff's own testimony); Stark v. Patalano Ford Sales, Inc., 30 Mass. App. Ct. 194, 202 (1991) ("There must be some evidence to provide a reasonable basis by which the jury may measure the loss"); Birbiglia v. St. Vincent Hosp., No. CA911280, 1994 WL 878836, at *6-7 (Mass. Super. Dec. 29, 1994), aff'd sub nom. Birbiglia v. St. Vincent Hosp., Inc., 427 Mass. 80 (1998) ("Proof of loss must be based on more than mere speculation" and expert testimony is a sufficient basis for proof of loss only when that testimony is based on a sufficient evidentiary foundation); Lowrie v. Castle, 225 Mass. 37, 51 (1916) (Loss of use damages "cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty"); G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 276 (1991) (Damages are recoverable when they "are neither speculative nor conjectural"); See also N. Assur. Co. of Am. v. Heard, 755 F. Supp. 2d 295, 302 (D. Mass. 2010) ("estimates by friendly witnesses, with no practical illustrations to support them, are too unsafe, as a rule, to be made the basis of a judicial award" but an expert witness's testimony on the amount is sufficient to establish a prima facie case); Algonquin Deep Sea Rsch. Corp. v. Perini Corp., 353 F. Supp. 561, 564 (D. Mass. 1973) (loss of use damages were not speculative because of testimony of experienced lobster fishing Captain justifying the amount of lost profits).

Not only do Plaintiff's tax documents not support their alleged damages, but Plaintiff also does not disclose any expert or produce any expert report analyzing these tax documents and

12

demonstrating how they support their damages figure. Therefore, Defendant Power Products is entitled to summary judgment on Plaintiff's loss of use claim as a matter of law.[2]

## IV.    CONCLUSION

Plaintiff has not demonstrated a prima facie case for breach of contract by non-performance. Additionally, Plaintiff has produced no expert report analyzing the highly complex fire event and causally linking it to any act or omission of the Defendant. Finally, Plaintiff's loss of use damages are not only unsubstantiated and speculative, but their own tax documents demonstrate Plaintiff actually profited during the period where the truck was out of service. Plaintiff has provided no evidence or expert testimony proving otherwise. For the foregoing reasons, Defendant respectfully requests this Honorable Court grant the following relief:

1. Allow the Defendant's motion for summary judgment in its entirety; or in the alternative

2. Allow the Defendant's Motion for Summary Judgment as to the Plaintiff's $738,000 loss of business income and/or loss of use as speculative.

---

[2] Should the liability issue be decided in Plaintiff's favor, Defendant does not dispute Defendant would be liable for property damage to the subject crane truck caused by the fire event. However, Defendant disputes Plaintiff's claim for loss of business income or loss of use damages. Business income is a different type of damage from property damage requiring a separate accounting expert to express how the alleged loss of use amount is causally linked to the fire.

13

Respectfully submitted,
Defendant:
POWER PRODCUTS SYSTEMS, LLC
By its Attorneys,

Christopher J. Sullivan–BBO # 548137
Samuel B. Chipman–BBO #680922
SULLIVAN & ASSOCIATES, LLC
500 West Cummings Park, Suite 4700
Woburn, MA 01801
(781) 939-5840

Dated: 7/22/22

14

# EXHIBIT E-1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 2181CV01329

N.E. BRIDGE CONTRACTORS, INC. )
    Plaintiff, )
     )
     )
v. )
     )
POWER PRODUCTS SYSTEMS, LLC, )
    Defendant. )
     )

## AFFIDAVIT OF DEFENDANT WITNESS GLENN RICCIARDELLI

I, Glenn Ricciardelli, do hereby state and depose as follows:

1. I have been a Certified Public Accountant since 1983 and have consulted on numerous lost income evaluations for businesses such as N.E. Bridge Contractors, Inc. (see attached CV);

2. I have been retained by the Defendant, Power Product Systems, LLC, in the above-captioned litigation;

3. My business address is 10 High Street, Ste. 1000, Boston, MA 02110;

4. In order for me to analyze the plaintiff's claim for loss of use and loss of business income I would need the following information:

    a. Repair invoice indicating the subject vehicle was out of service for 72 weeks through December 16, 2020.

    b. A complete listing of plaintiff's fleet of road-capable under bridge trucks that were available for use during the period of January 2018 through April 2021, including detail to any additions or deletions to the fleet during this 40-month period;

    c. Whether plaintiff's fleet of vehicles is capable of providing compatible services as the one damaged in the loss;

    d. Any steps taken by plaintiff to mitigate their loss of use while the damaged Aspen Aerial A-30 was out of service;

    e. Internal records or reports to review the utilization of the vehicle damaged in the accident, as well as other vehicles in plaintiff's fleet that was capable of providing compatible services during the period of January 2018 through April 2021;

    f.   Details of plaintiff's monthly billings from January 2018 through April 2021

    g.   Details of plaintiff's monthly revenue by customer from January 2018 through April 2021;

    h.   Copies of plaintiff's 2018-2021 annual financial results, including detail to revenue and operating expenses by account; and

    i.   Copies of the federal tax returns including all schedules for the calendar years 2016-2018 (three years before the loss), 2019 (the year of the loss), and 2020 (the year after the loss).

5.   It is my understanding that the plaintiff has not provided the defendant with these records.

Signed under the pains and penalties of perjury, this 9th day of March 2022.

_Glenn Ricciardelli_

            Glenn Ricciardelli, CPA, CVA, CFE, CFF

# EXHIBIT E-2

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                SUPERIOR COURT DEPARTMENT
                                             CIVIL ACTION NO. 2181CV01329

|  |  |
|---|---|
| N.E. BRIDGE CONTRACTORS, INC. | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| POWER PRODUCTS SYSTEMS, LLC, | ) |
| Defendant. | ) |

## **SECOND AFFIDAVIT OF DEFENDANT WITNESS GLENN RICCIARDELLI**

I, Glenn Ricciardelli, do hereby state and depose as follows:

1. I have been a Certified Public Accountant since 1983 and have consulted on numerous evaluations and assessments of commercial claims for lost income such as N.E. Bridge Contractors, Inc. (see CV attached as Exhibit A);

2. I have been retained by the Defendant, Power Product Systems, LLC, in the above-captioned litigation;

3. My business address is 10 High Street, Ste. 1000, Boston, MA 02110;

4. In order for me to accurately assess the plaintiff's claim for loss of use and loss of business income I would need the following information:

   a. The repair invoice or similar documentation confirming that the subject vehicle was out-of-service for 72 weeks through December 16, 2020;

   b. A complete listing of plaintiff's fleet of road-capable under bridge trucks that were available for use during the period of January 2018 through April 2021, including detail to any additions or deletions to the fleet during this 40-month period;

   c. Whether the plaintiff's fleet of vehicles included units that were capable of providing compatible services as the one damaged in the loss;

   d. An understanding of any steps taken by plaintiff to mitigate their loss of use while the damaged Aspen Aerial A-30 was out-of-service;

   e. Internal records or reports reflecting the utilization of the vehicle damaged in the accident, as well as other vehicles in plaintiff's fleet that were capable of providing compatible services during the period of January 2018 through April 2021;

f.  Details of plaintiff's monthly billings from January 2018 through April 2021;

g.  Details of plaintiff's monthly revenue by customer from January 2018 through April 2021; and

h.  Documentation in support of any contracts or customer orders that N.E. Bridge Contractors specifically lost due to the loss of use of the damaged Aspen Aerial A-30, including detail to the estimated contract revenue and timing of services to be provided.

5.  I am aware of the business income loss claim of New England Bridge Contractors, Inc. in the amount of $739,000 as reflected in the company's answers to interrogatories;

6.  I have received copies of the federal tax returns including all schedules for the calendar years 2016, 2017, 2018, 2019, 2020 and 2021 which have been very helpful to assist me in my review and analysis of the lost business income claim of the Plaintiff New England Bridge Contractors, Inc. from which I have drafted a Summary of the 2017 through 2021 Corporate tax returns (Exhibit B);

7.  As a result of my review of these records, I cannot ascertain how New England Bridge Contractors Inc. came to the conclusion the company lost $738,000 of business income due to the loss of use of their damaged vehicle while it was out-of-service for a 72-week period ended December 16, 2020;

8.  Specially, I found no evidence of any decrease or downturn in New England Bridge Contractors' financial performance during the years following the occurrence (i.e., 2019 & 2020);

9.  In my review of the tax returns and schedules, I was able to ascertain that in the calendar year 2019 (the year of the loss) New England Bridge Contractors Inc. reported gross sales of $8,009,163 and gross profit of $3,517,198;

10. In my review of the records, I was able to ascertain that in the calendar year 2020 (the year following the loss) New England Bridge Contractors Inc. reported gross sales of $7,574,730 and gross profit of $3,254,363;

11. In my review of the tax returns from 2016-2021 I have found that in the 2018 calendar year New England Bridge Contractors Inc. posted a ($718,037) net loss, in the calendar year 2019 the company reported net profit of $889,897, in 2020 the company reported net profit of $1,862,062, and in 2021 the company reported net profit of $2,346,057; and

12. Based on my education, training, and experience in review of the financial records afforded to me, and to reasonable degree of financial accounting certainty I cannot find any relationship between the claimed loss of business income of $738,000 to the loss of the use of the subject crane truck that was out of service from July 28, 2019 thru December 16, 2020.

SIGNED UNDER the PAINS and PENALTIES OF PERJURY THIS 21st DAY of JULY, 2022.


_____
Glenn Ricciardelli, CPA, CVA, CFE, CFF

# EXHIBIT F

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                  SUPERIOR COURT DEPARTMENT
                                               CIVIL ACTION NO. 2181CV01329

|  |  |
|---|---|
| N.E. BRIDGE CONTRACTORS, INC. | ) |
|       Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| POWER PRODUCTS SYSTEMS, LLC, | ) |
|       Defendant. | ) |

## <u>SECOND AFFIDAVIT OF DEFENDANT WITNESS GLENN RICCIARDELLI</u>

I, Glenn Ricciardelli, do hereby state and depose as follows:

1. I have been a Certified Public Accountant since 1983 and have consulted on numerous evaluations and assessments of commercial claims for lost income such as N.E. Bridge Contractors, Inc. (see CV attached as Exhibit A);

2. I have been retained by the Defendant, Power Product Systems, LLC, in the above-captioned litigation;

3. My business address is 10 High Street, Ste. 1000, Boston, MA 02110;

4. In order for me to accurately assess the plaintiff's claim for loss of use and loss of business income I would need the following information:

   a. The repair invoice or similar documentation confirming that the subject vehicle was out-of-service for 72 weeks through December 16, 2020;

   b. A complete listing of plaintiff's fleet of road-capable under bridge trucks that were available for use during the period of January 2018 through April 2021, including detail to any additions or deletions to the fleet during this 40-month period;

   c. Whether the plaintiff's fleet of vehicles included units that were capable of providing compatible services as the one damaged in the loss;

   d. An understanding of any steps taken by plaintiff to mitigate their loss of use while the damaged Aspen Aerial A-30 was out-of-service;

   e. Internal records or reports reflecting the utilization of the vehicle damaged in the accident, as well as other vehicles in plaintiff's fleet that were capable of providing compatible services during the period of January 2018 through April 2021;

    f.   Details of plaintiff's monthly billings from January 2018 through April 2021;

    g.   Details of plaintiff's monthly revenue by customer from January 2018 through April 2021; and

    h.   Documentation in support of any contracts or customer orders that N.E. Bridge Contractors specifically lost due to the loss of use of the damaged Aspen Aerial A-30, including detail to the estimated contract revenue and timing of services to be provided.

5. I am aware of the business income loss claim of New England Bridge Contractors, Inc. in the amount of $739,000 as reflected in the company's answers to interrogatories;

6. I have received copies of the federal tax returns including all schedules for the calendar years 2016, 2017, 2018, 2019, 2020 and 2021 which have been very helpful to assist me in my review and analysis of the lost business income claim of the Plaintiff New England Bridge Contractors, Inc. from which I have drafted a Summary of the 2017 through 2021 Corporate tax returns (Exhibit B);

7. As a result of my review of these records, I cannot ascertain how New England Bridge Contractors Inc. came to the conclusion the company lost $738,000 of business income due to the loss of use of their damaged vehicle while it was out-of-service for a 72-week period ended December 16, 2020;

8. Specially, I found no evidence of any decrease or downturn in New England Bridge Contractors' financial performance during the years following the occurrence (i.e., 2019 & 2020);

9. In my review of the tax returns and schedules, I was able to ascertain that in the calendar year 2019 (the year of the loss) New England Bridge Contractors Inc. reported gross sales of $8,009,163 and gross profit of $3,517,198;

10. In my review of the records, I was able to ascertain that in the calendar year 2020 (the year following the loss) New England Bridge Contractors Inc. reported gross sales of $7,574,730 and gross profit of $3,254,363;

11. In my review of the tax returns from 2016-2021 I have found that in the 2018 calendar year New England Bridge Contractors Inc. posted a ($718,037) net loss, in the calendar year 2019 the company reported net profit of $889,897, in 2020 the company reported net profit of $1,862,062, and in 2021 the company reported net profit of $2,346,057; and

12. Based on my education, training, and experience in review of the financial records afforded to me, and to reasonable degree of financial accounting certainty I cannot find any relationship between the claimed loss of business income of $738,000 to the loss of the use of the subject crane truck that was out of service from July 28, 2019 thru December 16, 2020.

SIGNED UNDER the PAINS and PENALTIES OF PERJURY THIS 21st DAY of JULY, 2022.

_____
Glenn Ricciardelli, CPA, CVA, CFE, CFF