**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| N.E. BRIDGE CONTRACTORS, INC.     ) <br>     **Plaintiff**     ) <br>     ) <br> **v.**     ) <br>     ) <br> **SENTRY SELECT INSURANCE**     ) <br> **COMPANY**     ) <br>     **Defendant**     ) | **C.A. 1:21-CV-11354-DLC** |

**N.E. BRIDGE CONTRACTORS, INC.'S RESPONSE TO STATEMENT OF "UNDISPUTED" FACTS SUBMITTED IN SUPPORT OF DEFENDANT SENTRY SELECT INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff N.E. Bridge Contractors, Inc. ("NEB") hereby proffers the following responses to Defendant Sentry Select Insurance Company's ("Sentry") statement of facts submitted in support of its Motion for Summary Judgment (the "Motion").

1. In May 2019, N.E. Bridge Contractors, Inc. brought one of its crane trucks to Power Products facility for engine repairs.

   AUTHORITY:  Complaint, ¶6.  (A copy of N.E. Bridge's Complaint against Power Products is

   PLAINTIFF'S RESPONSE: **ADMITTED.**

2. Ten weeks later, the truck caught fire.

   AUTHORITY:  Complaint, ¶8.

   PLAINTIFF'S RESPONSE: **ADMITTED.**

3. N.E. Bridge concluded that the fire was caused by the negligence of Power Products in servicing the vehicle in May.

AUTHORITY:  Complaint,  ¶10..

PLAINTIFF'S RESPONSE: **DENIED.   See Complaint, ¶9-10.   Further answering, the Complaint sets forth that the conclusion as to the cause of the fire was made by all parties referenced therein, and not just NEB.**

4. Following the loss, N.E. Bridge made a claim to Power Products' liability insurer (Sentry Select) to recover damages resulting from the 2019 truck fire.

AUTHORITY:   Complaint, ¶11-12.

PLAINTIFF'S RESPONSE: **ADMITTED.**

5. In April 2021, Sentry Select retained the services of a forensic accountant (Glenn Driscoll of Mattson Driscoll D'Amico) to review N.E. Bridge's claim to adjust this loss

AUTHORITY:  Affidavit of Michael F. Aylward,  ¶6.

PLAINTIFF'S RESPONSE: **ADMITTED.**

.

6. On April 30, 2021, Ricciardelli e-mailed counsel for N.E. Bridge, identifying the documents that he needed to adjust the claim.

AUTHORITY:  Affidavit of Michael F. Aylward,  ¶6.

PLAINTIFF'S RESPONSE:  **DENIED. The cited authority does not support the averment.**

7. Rather than responding to Ricciardelli, N.E. Bridge issued a 93A demand letter to Sentry Select on May 26, 2021.

   AUTHORITY:  Affidavit of Michael F. Aylward,  ¶2.

   PLAINTIFF'S RESPONSE: **DENIED. See Exhibit B-1 to the Motion, in which counsel for N.E. Bridge did indeed respond to Mr. Ricciardelli's requests for information.  Also See Affidavit of Brian C. Almeida, Esq, Exhibit A.**

8. On June 25, 2021, counsel for Sentry Select responded, denying that Sentry Select had acted unreasonably or in violation of Chapters 93A/176D.

   AUTHORITY:  Affidavit of Michael F. Aylward,  ¶3.

   PLAINTIFF'S RESPONSE: **ADMITTED. NEB denies that this averment is material to the determination of the Motion.**

9. On June 10, 2021, N.E. Bridge sued Power Products in the Middlesex County Superior Court, claiming that it was entitled to $738,000 in compensation for the period of time that its truck was out of service following the 2019 fire.

   AUTHORITY:  Affidavit of Michael F. Aylward,  ¶5.

   PLAINTIFF'S RESPONSE: **ADMITTED.**

10. In a separate suit filed on July 2, 2021, N.E. Bridge sued Sentry, alleging that Sentry is liable under G.L. c.93A  §9 by reason of its failure to settle a claim for

which liability is claimed to be "reasonably clear" in violation of the requirements of G.L. c.176D §3(9)(f).

AUTHORITY:  Affidavit of Michael F. Aylward,  ¶4.

PLAINTIFF'S RESPONSE: **DENIED as to the subsection of G.L. c. 93A which NEB asserts its claim under, the remainder of the averment is ADMITTED.  See Docket Entry No. 16.**

11. After the case was removed to federal court, the parties agreed to a stay of proceedings to allow N.E. Bridge to comply with Ricciardelli's requests for information and documentation.. (SUMF ¶11).

AUTHORITY:  Affidavit of Michael F. Aylward,  ¶6.

PLAINTIFF'S RESPONSE: **ADMITTED.**

12.. In this April 30, 2021 e-mail Ricciardelli had stated:

*Greetings Brian & Jessica,*

*I hope this communication finds you well.  I have reviewed the documents attached to Brian's November 30th e-mail transmittal that was provided in response to our request for information. The documents were limited to the following: A) Monthly Loan Statements from Blue Hills Bank applicable to a $550,000 Commercial Loan for March thru May 2019; B) Monthly Loan Payment Notices from Rockland Trust (who acquired Blue Hills Bank in March 2019) for the same loan for July 2019 thru December 2020; C) a Job Calendar listing the monthly contracts that were active each month for March thru May 2019; and D) a similar Job Calendar listing the monthly contracts that were active each month for July 2019 thru December 2020.*

*I am uncertain of the reason for providing Items A & B, the monthly loan statements.  It appears that Items C & D, the Job Calendars, may pertain to*

-4-

*our Request #6 Utilization of Equipment.  If so, we require a key or legend that provides a description of each piece of equipment reported in the monthly calendars, including but not limited to 30b, 30g, 30n, 30r, 30v, 30y, etc.  Additionally, we require the monthly Job Calendars for January 2018 thru February 2019, June 2019, and January thru April 2021.*

*We are unable to opine on your client's loss of use claim based on the limited information that has been produced to date.  Therefore, I have taken the liberty of reiterating our request for the information that is pertinent to our evaluation of your client's claim below.  In doing so, I crossed-off Item 5, as we understand you are unable to provide a copy of the contract that was in force at the time of the accident.*

*1) Repair Period: It is our understanding that the damaged vehicle returned to service on Wednesday, December 16th, 2020.  Please provide a copy of the repair invoice or related documentation confirming that the damaged vehicle was out-of-service for 72-weeks thru December 16th, 2020.*

*2) Fleet of Trucks: Please provide a listing of NE Bridge Contractors' fleet of road-capable under bridge trucks that were available for use during the period of January 2018 thru April 2021, including detail to any additions or deletions to the fleet during this 40-month period.*

*3) Compatible Vehicles: Please advise which vehicles in NE Bridge Contractors' fleet of vehicles is capable of providing compatible services as the Aspen Aerial A-30 that was damaged in the accident.*

*4) Mitigation Efforts: Please provide an explanation as to the steps taken by NE Bridge Contractors to mitigate their loss of use while the damaged Aspen Aerial A-30 was out-of-service.*

*5) CSX Services Agreements: We request copies of Services Agreements that were in force between CSX & NE Bridge Contractors during the 2018 thru 2021 years.  According to Stephanie Stevens' affidavit, this appears to represent the original contract #195510 that was consummated on February 8th, 2008, and was renewed on several occasions until August 6th, 2020, when the parties entered into a new contract.*

*6) Utilization of Equipment: We request access to internal records or reports that would allow us to review the utilization of the vehicle that was damaged in the accident, as well as the other vehicles in NE Bridge Contractors' fleet that was capable of providing compatible services as the Aspen Aerial A-30 during the period of January 2018 thru April 2021.*

*7) Billings to CSX: Detail to NE Bridge Contractors' monthly billing to CSX from January 2018 thru April 2021.  To date, we have received a single*

*invoice #10/19-2B that was issued to CSX on October 31st, 2019. Additionally, this invoice confirms the billing for the use of a "Hi Rail Aspen Aerials A-30 with Driver" during the end of September thru October 25th, 2019.*

*8) Monthly Revenue by Customer: Detail to NE Bridge Contractors' monthly revenue by customer from January 2018 thru April 2021.*

*9) Annual Financial Results: Copies of NE Bridge Contractors' 2018 thru 2020 annual financial results, including detail to revenue and operating expenses by account.*

*I thank you for your attention to this matter and ask that you please reach out to me with any questions or concerns regarding the information addressed herein.   Additionally, we acknowledge our request is comprehensive and we welcome a teleconference with your client in the event it would facilitate the exchange of responses to some of the above inquiries.   Lastly, we would be happy to execute a non-disclosure agreement in the event your client is concerned with sharing proprietary information, as long as the terms of the agreement allow us to share our findings with Sentry Select Insurance and their representatives.*

*Once the requested information has been compiled and is available for distribution I ask that you please arrange to have the information forwarded along.   Alternatively, you can use the following link to our encrypted Sharefile site where you can upload ("drag & drop") the electronic files for our access.*

*Respectfully,*
*GR*
*Glenn Ricciardelli*
*CPA, CVA, CFE, CFF | Partner*

AUTHORITY:  Affidavit of Michael F. Aylward,  ¶10..

PLAINTIFF'S RESPONSE: **The referenced email is a written document, which speaks for itself.  To the extent that a response is deemed to be required, ADMITTED.**

-6-

13. During the time that the stay was in effect, Glenn Ricciardelli made several additional requests to counsel for N.E. Bridge seeking documentation for their $738,000 loss of income claim.

AUTHORITY:  Affidavit of Michael F. Aylward,  ¶9.

PLAINTIFF'S RESPONSE:   **DENIED. Further answering, Mr. Ricciardelli made the same request, repeatedly, despite having been provided with responsive documents.  <u>See</u> Affidavit of Brian C. Almeida, Esq., Exhibit A.**

14.     In September, counsel for N.E. Bridge finally submitted some documents to Ricciardelli.   Unfortunately, the response avoided most of the categories for which documentation had been requested.  As Ricciardelli stated in his September 25, 2021 response:

Greetings Brian & Jessica,

I have reviewed the recent response to our request for information and I find it woefully inadequate, as it fails to address the majority of the requested items. Additionally, NE Bridge Contractors is claiming that the loss of use of their Aspen Aerial A-30 resulted in lost income but your response failed to provide any financial information to support such a loss. Therefore, I am reiterating our request for the following information that is pertinent to our evaluation of your client's loss of use claim, while s

triking Item 5 as we understand you are unable to provide a copy of the contract that was in force at the time of the accident.

1) <u>Repair Period:</u> It is our understanding that the damaged vehicle returned to service on Wednesday, December 16th, 2020. Please provide a copy of the repair invoice or related documentation confirming that the damaged vehicle was out-of-service for 72-weeks thru December 16th, 2020.

2) <u>Fleet of Trucks:</u> Please provide a listing of NE Bridge Contractors' fleet of road-capable under bridge trucks that were available for use during the period of January 2018 thru

April 2021, including detail to any additions or deletions to the fleet during this 40-month period.

3)  Compatible Vehicles: Please advise which vehicles in NE Bridge Contractors' fleet of vehicles is capable of providing 'compatible services as the Aspen Aerial A-30 that was damaged in the accident.

4)  Mitigation Efforts: Please provide an explanation as to the steps taken by NE Bridge Contractors to mitigate their loss of use while the damaged Aspen Aerial A-30 was out-of-service.

5)  CSX Service Agreements [request deleted"

6)  Utilization of Equipmer it. We request access to irternal records or reports that would allow us to review the utilization of the vehicle that was damaged in the accident, as well as the other vehicles in NE Bridge Contractors' fleet that was capable of providing compatible services as the Aspen Aerial A-30 during the period of January 2018 thru April 2021.

7.  Billings to CSX: Detail to NE Bridge Contractors' monthly billing to CSX from January 2018 thru April 2021. To date, we have received a single invoice #10/19-2B that was issued to CSX on October 31st, 2019. Additionally, this invoice confirms the billing for the use of a "Hi Rail Aspen Aerials A-30 with Driver" during the end of September thru October 25th, 2019.

8)  Monthly Revenue by Customer: Detail to NE Bridge Contractors' monthly revenue by customer from January 2018 thru April 2021.

9)  Annual Financial Results: Copies of NE Bridge Contractors' 2018 thru 2020 annual financial results, including detail to revenue and operating expenses by account.

I thank you for your attention to this matter and ask that you please reach out to me with any questions or concerns regarding the information addressed herein. Additionally, we acknowledge our request is comprehensive and we welcome a teleconference with your client in the event it would facilitate the exchange of responses to some of the above inquiries. Lastly, we would be happy to execute a non-disclosure agreement in the event your client is concerned with sharing proprietary information, as long as the terms of the agreement allow us to share our findings with Sentry Select Insurance and their representatives.

Once the requested information has been compiled and is available for distribution I assume you will arrange to have the information forwarded along. Alternatively, I have provided the following link to our encrypted Sharefile site where you can upload ("drag & drop") the electronic files for our access.

MDD Sharefile Link: https://mdd.sharefile.com/r-rcb5e1a42ac25496b8b37e12c65e8cff2

Respectfully,
GR

**Glenn Ricciardelli**
CPA, CVA, CFE, CFF Partner


AUTHORITY:  Affidavit of Michael F. Aylward,  ¶9.

PLAINTIFF'S  RESPONSE:   **NEB DENIES the characterization that it had "finally" responded, and that its response "avoided most of the categories for which documentation had been requested."  See Affidavit of Brian C. Almeida, Esq., Exhibit A.   The remainder of the averment references an email is a written document, which speaks for itself.  To the extent that a response is deemed to be required as to the contents of said email, ADMITTED.**

15. In response, plaintiff's counsel provided from further information on November 30 but again failed to respond to most of the areas where documentation was requested. As a result, Ricciardelli sent an e-mail on November 30, 2021 stating

> Greetings Brian & Jessica,
>
> I hope this communication finds you well. I have reviewed the documents attached to Brian's November 30th e-mail transmittal that was provided in response to our request for information. The documents were limited to the following: A) Monthly Loan Statements from Blue Hills Bank applicable to a $550,000 Commercial Loan for March thru May 2019; B) Monthly Loan Payment Notices from Rockland Trust (who acquired Blue Hills Rank in March 2019) for the same loan for July 2019 thru December 2020; C) a Job Calendar listing the monthly contracts that were active each month for March thru May 2019; and D) a similar Job Calendar listing the monthly contracts that were active each month for July 2019 thru December 2020.
>
> I am uncertain of the reason for providing Items A & B, the monthly loan statements. It appears that Items C & D, the Job Calendars, may pertain to our Request #6 Utilization of Equipment. If so, we require a key or legend that provides a description of each piece of equipment reported in the monthly calendars, including but not limited to 30b, 30g, 30n, 30r, 30v, 30y, etc. Additionally, we require the monthly Job Calendars for January 2018 thru February 2019, June 2019, and January thru April 2021.

The e-mail also enumerated numerous categories for which no documentary support existed.

AUTHORITY:  Affidavit of Michael F. Aylward,  ¶11.

PLAINTIFF'S RESPONSE: **NEB ADMITS that it provided further information on November 30, but DENIES the characterization that it had "finally" responded, and that its response "again failed to respond to most of the areas where documentation was requested."  See Affidavit of Brian C. Almeida, Esq., Exhibit A. The remainder of the averment references an email is a written document, which speaks for itself.  To the extent that a response is deemed to be required as to the contents of said email, ADMITTED.**

16.    In the absence of this requested documentation, Power Products requested N.E. Bridge's tax returns to see if they supported any loss of income during the 2019-2020 period; although N.E. Bridge refused to turn over these documents for several months, they were ultimately ordered to produce them to Power Products on April 14, 2022.

AUTHORITY:  Affidavit of Michael F. Aylward,  ¶14.

PLAINTIFF'S RESPONSE: **ADMITTED.**

17.    Power Products has served a July 22, 2022 summary judgment motion in the underlying case, arguing that N.E. Bridge has failed to document its claimed loss of income and that its tax returns, in fact, show increased income.

AUTHORITY:  Affidavit of Michael F. Aylward,  ¶15.

PLAINTIFF'S RESPONSE: **ADMITTED.**

18.   Attached to the Motion is an affidavit from Glenn Ricciardelli in which states the following:

5.  I am aware of the business income loss claim of New England Bridge Contractors, Inc. in the amount of $739,000 as reflected in the company's answers to interrogatories;

6.  I have received copies of the federal tax returns including all schedules for the calendar years 2016, 2017, 2018, 2019, 2020 and 2021 which have been very helpful to assist me in my review and analysis of the lost business income claim of the Plaintiff New England Bridge Contractors, Inc. from which I have drafted a Summary of the 2017 through 2021 Corporate tax returns (Exhibit B);

7.  As a result of my review of these records, I cannot ascertain how New England Bridge Contractors Inc. came to the conclusion the company lost $738,000 of business income due to the loss of use of their damaged vehicle while it was out-of-service for a 72-week period ended December 16, 2020;

8.  Specially, I found no evidence of any decrease or downturn in New England Bridge Contractors' financial performance during the years following the occurrence (i.e., 2019 & 2020);

9.  In my review of the tax returns and schedules, I was able to ascertain that in the calendar year 2019 (the year of the loss) New England Bridge Contractors Inc. reported gross sales of $8,009,163 and gross profit of $3,517,198;

10. In my review of the records, I was able to ascertain that in the calendar year 2020 (the year following the loss) New England Bridge Contractors Inc. reported gross sales of $7,574,730 and gross profit of $3,254,363;

11. In my review of the tax returns from 2016-2021 I have found that in the 2018 calendar year New England Bridge Contractors Inc. posted a ($718,037) net loss, in the calendar year 2019 the company reported net profit of $889,897, in 2020 the company reported net profit of $1,862,062, and in 2021 the company reported net profit of $2,346,057; and

12. Based on my education, training, and experience in review of the financial records afforded to me, and to reasonable degree of financial accounting certainty I cannot find any relationship between the claimed loss of business income of $738,000 to the loss of the use of the subject crane truck that was out of service from July 28, 2019 thru December 16, 2020.

AUTHORITY:  Affidavit of Michael F. Aylward,  ¶16.

PLAINTIFF'S RESPONSE: **This averment references an affidavit which is a written document, which speaks for itself.  To the extent that a response is deemed to be required as to the contents of said affidavit, ADMITTED.**

Respectfully submitted,
N.E. Bridge Contractors, Inc.,
By its Attorneys,

Date: August 16, 2022

/s/ Brian C. Almeida, Esq.
Alan B. Almeida, Esq.          BBO# 016013
almeida@connhill.com
Brian C. Almeida, Esq.          BBO# 696005
briana@connhill.com

Connor & Hilliard, P.C.
1350 Main Street, Walpole, MA 02081
Telephone: (508)668-4774
Facsimile:  (508)660-2458

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the Clerk of the United States District Court for the District of Massachusetts by way of the CM/ECF system, and that service upon counsel of record for the other parties to this action via electronic mail, by agreement of the parties to accept service in such a manner.

/s/ Brian C. Almeida, Esq.
Brian C. Almeida, Esq.
