UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

N.E. BRIDGE CONTRACTORS, INC.,
        Plaintiff,

v.                                  No. 21-CV-11354-DLC

SENTRY INSURANCE,
        Defendant.

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Cabell, U.S.M.J.

    Plaintiff N.E. Bridge Contractors, Inc. ("NEB") contends that

defendant Sentry Insurance ("Sentry") failed to adequately respond

to a claim NEB made for coverage for repair costs regarding one of

its trucks, in violation of M.G.L. c. 93A ("Chapter 93A"), § 11.

Sentry moves for summary judgment.  (Dkt. No. 24).  For the reasons

explained below, the court allows the motion.

I.  **Factual Background**

    The following facts are undisputed unless otherwise noted.

Where the facts are in dispute, the court views them in the light

most favorable to NEB as the non-movant, drawing all reasonable

inferences in its favor.  *See Carlson v. Univ. of New England*, 899

F.3d 36, 43 (1st Cir. 2018).[1]

---

[1] To the extent the court draws on facts asserted in the complaint (Dkt. No.
2-1), it only relies in its analysis on facts Sentry has admitted.  *See* Fed.
R. Civ. P. 56(c)(1)(A) (including "admissions" in the list of record

In May 2019, NEB brought one of its crane trucks to Power Products Systems, LLC (hereinafter, "Power Products") for engine repairs.[2] (Dkt. No. 26, ¶ 1). The truck was a model A-30, a relatively small truck often used on rail projects. (Dkt. No. 28-1, p. 6). Approximately ten weeks later, after Power Products had completed its repairs, the truck caught fire on its way to an NEB job site. (Dkt. No. 2-1, ¶ 8; Dkt. No. 26, ¶ 2). On or about September 12, 2019, "all parties involved" participated in a joint forensic investigation into the cause of the fire. (Dkt. No. 2-1, ¶ 9). NEB contends that all parties reached the conclusion that Power Products' negligence in servicing the engine caused the fire; Sentry asserts that only NEB reached that conclusion. (Dkt. No. 26, ¶ 3; Dkt. No. 28-2, ¶ 3). NEB submitted a claim to Sentry, which provided liability insurance to Power Products, to recover damages caused by the fire. (Dkt. No. 26, ¶ 4).

Allegedly, NEB and Sentry began communicating about the former's claim in August 2020, while the truck was still being repaired. The two parties have differing accounts of those communications. NEB asserts that its counsel contacted Sentry on or about August 20, 2020, to inquire about Sentry paying NEB's deductible, and that Sentry agreed to pay the deductible directly

---

materials that may properly support an assertion at the summary judgment stage).

[2] The record does not specify the nature or extent of these engine repairs.

to the repair company.  (Dkt. No. 2-1, ¶ 11).  Over the next four months, NEB purportedly "corresponded with Sentry's adjuster to determine the amount of lost revenue caused by" the fire.  (*Id.* at ¶ 12).  On or about December 16, 2020, NEB's counsel informed Sentry that the repairs were complete and that "NEB would determine the final figures of lost revenue." (*Id.* at ¶ 13).  Sentry admits only that it received certain communications and documents from NEB's counsel during this period, none of which substantiated NEB's claimed lost revenue, and that NEB informed Sentry about the completion of the repairs and its forthcoming final figures.  (Dkt. No. 31, ¶¶ 11-14).  The parties further dispute whether Sentry assured NEB that it "would have an offer of resolution promptly" or merely indicated that it would respond after receiving "the requested documentation of damage."  (Dkt. No. 2-1, ¶ 15; Dkt. No. 31, ¶ 15).

The parties largely agree on the timeline of events after December 2020, if not their import.

On January 11, 2021, NEB's counsel emailed Sentry NEB's final loss figures.  (Dkt. No. 2-1, ¶ 16).

On February 3, 2021, Sentry's adjuster responded by requesting additional documentation as to those figures.  (Dkt. No. 2-1, ¶ 17).  NEB's counsel responded the same day, informing Sentry that it (Sentry) already had the necessary documentation.

(*Id.*).  Sentry acknowledges this exchange but denies that it had the materials it needed.  (Dkt. No. 31, ¶ 17).

On March 2, 2021, NEB's counsel contacted Sentry to request a settlement offer.  (Dkt. No. 2-1, ¶ 18).  Sentry did not respond. (*Id.*).

On April 13, 2021, NEB's counsel contacted Sentry again to inquire about the claim and to inform Sentry that NEB would issue a demand letter "if a resolution was not forthcoming."  (*Id.* at ¶ 19).  Sentry requested until the end of the month to make an offer. (*Id.* at ¶ 20).

On April 23, 2021, Sentry informed NEB that it had retained Glenn Ricciardelli ("Ricciardelli"), an outside accountant, to "analyze the loss of use aspects of the claim."  (*Id.* at ¶ 21). Six days later, Ricciardelli emailed NEB's counsel to request further documentation.  (*Id.* at ¶ 23).  The parties dispute whether NEB had already provided this documentation to Sentry.  (*Id.*; Dkt. No. 31, ¶ 23).

On May 6, 2021, NEB issued the demand letter to Sentry as forewarned.  (Dkt. No. 2-1, ¶¶ 24-25).[3]  Sentry responded to the letter, denying any fault.  (Dkt. No. 26, ¶ 8).

---

[3] In its statement of facts, Sentry asserts that NEB issued the demand letter on May 26, 2021.  (Dkt. No. 26, ¶ 7).  In its answer, though, Sentry admits that the demand letter was issued on May 6.  (Dkt. No. 31, ¶ 25).  The exact date the letter was sent is immaterial.

On July 2, 2021, NEB initiated this action by commencing an action against Sentry in state court, which Sentry timely removed to federal court.[4]   (Dkt. No. 2).   The complaint asserts that Sentry engaged in unfair insurance claims settlement practices prohibited by M.G.L. c. 176D ("Chapter 176D"), in violation of M.G.L. c. 93A, § 11.[5]   (Dkt. No. 2-1, ¶¶ 28-36).

Despite the lawsuit, the parties continued to work toward settling NEB's claim.   NEB provided further documentation to Ricciardelli in response to his requests, in September 2021 and again in November 2021.   (Dkt. No. 28-1, pp. 9, 11).   Apparently, neither response satisfied Ricciardelli, who characterized the first as "woefully inadequate."   (*Id.* at pp. 6, 9).   NEB provided additional documents on two occasions in January 2022 while also explaining to Ricciardelli why, in its view, several of his requests were irrelevant.   (*Id.* at pp. 4-7).

## II.  **Legal Standard**

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "assert[ing] the

---

[4] NEB also brought a separate state court action against Power Products around the same time to recover for its lost earnings while the A-30 truck was out of service.  (Dkt. No. 26, ¶ 9).

[5] Although the complaint ostensibly asserts a claim pursuant to M.G.L. c. 93A, § 9, the court treats it as asserting a claim pursuant to Section 11, as discussed below.

absence of a genuine issue of material fact and then support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003). "An issue is 'genuine' if it can be 'resolved in favor of either party,' and a fact is 'material' if it 'has the potential of affecting the outcome of the case.'" *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (quoting *Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016)). In deciding the motion, the court "may take into account any material that would be admissible or usable at trial . . . [but] inadmissible evidence may not be considered." *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993).

Once the moving party meets its initial burden, the opposing party "bears the burden of producing specific facts sufficient to defeat summary judgment." *González-Cabán v. JR Seafood Inc.*, 48 F.4th 10, 14 (1st Cir. 2022) (internal quotations omitted). More narrowly, the opposing party must "produce specific facts, *in suitable evidentiary form*, to establish the presence of a trialworthy issue." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006) (emphasis added and internal quotation omitted); *see also Ingram v. Brink's, Inc.*, 414 F.3d 222, 229 (1st Cir. 2005) ("[S]ummary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation."); *Gorski v. N.H. Dep't of Corrections*, 290 F.3d 466, 475-76 (1st Cir. 2002)

6

("In opposing a motion for summary judgment, a plaintiff must proffer admissible evidence that could be accepted by a rational trier of fact as sufficient to establish the necessary proposition."). Ultimately, the court must "view the record in the light most favorable to the non-moving party and resolve all reasonable inferences in its favor, without weighing the evidence or evaluating the credibility of the witnesses." *Sheehan v. The N. Am. Mktg. Corp.*, 610 F.3d 144, 149 (1st Cir. 2010) (citing *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006)).

## III.  Discussion

### A.  *NEB's Failure to Amend the Complaint*

As a threshold matter, Sentry argues that NEB's Chapter 93A claim fails as framed because it alleges a violation of Section 9 rather than Section 11 of the statute.  This is an important distinction, Sentry argues, because Section 11 provides a right to sue for "[a]ny person who engages in the conduct of any trade or commerce" and suffers a loss due to another's unfair trade practices, M.G.L. c. 93A, § 11, whereas section 9 provides a right to sue for any *other* person so harmed.  *Id.* at § 9(1) (emphasis added); *see also Id.* at § 1(a) (defining a "person" as including "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity."). Sentry argues that NEB should have invoked Section 11 here because it is engaged in trade or commerce; consequently, Section 9 does

not apply to NEB and does not provide it with a cause of action, and the complaint therefore fails to state a valid claim for relief.

Sentry advanced essentially the same argument in previously moving to dismiss the complaint. *See* (Dkt. No. 12). The judge assigned to the case at the time, Judge Sorokin, denied the motion to dismiss in an electronic order. (Dkt. No. 16). Sentry renews its argument based on its interpretation of Judge Sorokin's order, which reads in its entirety:

> The Motion to Dismiss, Doc. No. 12, is DENIED as the Complaint plausibly, albeit somewhat thinly, alleges a claim under M.G.L. Chapter 93A, Section 11. As the Plaintiff concedes, there is no Section 9 claim and, to the extent such a claim is asserted, it reflects a typographical error. Accordingly, the Court considers the claim as one under Section 11. Plaintiff may file an amended complaint correcting the error within seven days. The Clerk shall schedule a Rule 16 Conference.

(*Id.*). Focusing on the portion of the order permitting NEB to "file an amended complaint correcting the error within seven days," Sentry contends the court found the complaint to be defective and gave NEB a limited window to cure the deficiency. Because NEB never filed an amended complaint, it failed to cure the pleading defect, warranting judgment in Sentry's favor.

To be sure, the portion Sentry focuses on could, standing alone, plausibly be read to amount to a command that NEB correct the statutory reference, or else. However, the passage immediately preceding this portion provides relevant context clarifying that

8

no such command or directive was issued.  Rather, Judge Sorokin accepted NEB's characterization of the error as no more than a "typographical error," and for that reason "[a]ccordingly . . . consider[ed] the claim as one under Section 11."  To this court, Judge Sorokin unambiguously stated that the complaint asserted a claim under Section 11 notwithstanding its erroneous reference to Section 9, and his overture to NEB was in essence an invitation, if not also a polite suggestion, to correct the record for posterity's sake, as underscored by his use of the permissive "may file" rather than the imperative "shall file."  That NEB declined to do so may be mildly surprising, but it is of no legal import. The order did not require NEB to amend the complaint, which the court reads as asserting a violation of M.G.L. c. 93A, § 11.

   B.  *Evidence of Unfair Trade Practices*

   Turning then to the heart of the matter, the complaint, given a generous read, alleges that Sentry violated Chapter 176D and thus Chapter 93A in three different ways, by: (1) "failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies," *see* M.G.L. c. 176D, § 3(9)(b); (2) "failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," *see id.* at § 3(9)(c); and (3) "failing to reach a prompt and fair settlement once liability has become

reasonably clear," *see id.* at § 3(9)(f).   (Dkt. No. 2-1, ¶ 31). The court will examine each in turn.

In so doing, the court notes at the outset that the record in this case is unusually thin; the evidence in the aggregate consists of certain admitted facts in the complaint, and one affidavit (with exhibits) from each party's counsel.[6]   Of the eight exhibits attached to Sentry's affidavit (Dkt. No. 27) three are filings from NEB's lawsuit against Power Products, three are affidavits from Sentry's accountant (Ricciardelli) in connection with that same suit, and two are excerpts of an email thread between Sentry's counsel, NEB's counsel, and Ricciardelli.[7]   NEB's affidavit (Dkt. No. 28-1) simply authenticates and attaches a more complete version of the same email thread.   Notably, every email in the thread was written after Sentry removed the instant suit to this court.   *See* (Dkt. No. 28-1).   Indeed, both affidavits and their exhibits (and thus the record) are silent as to any communications between NEB and Sentry before NEB issued its demand letter.

---

[6] The court also notes that Sentry's counsel's affidavit appears to assert material facts based on counsel's personal knowledge, putting counsel at least theoretically in a position where he could also be viewed as a potential witness.  This possibility might raise concerns in another setting, but the court lets the observation lie here without further consideration where NEB does not raise any objections to the affidavit and the court's disposition of the summary judgment motion ultimately does not turn on counsel's assertions.

[7] Of the three attached Ricciardelli affidavits, two of them (Exhibits E-1 and F) appear to be identical.

The record is even thinner on closer examination because some of the submissions cannot be considered under Rule 56. As to the state court filings attached to Sentry's affidavit (Exhibits A, C, and D), the court takes judicial notice of the fact that they were filed but does not consider their substance for the truth because the assertions contained in them constitute inadmissible hearsay. *See* Fed. R. Evid. 802 (hearsay is generally inadmissible); *Horta*, 4 F.3d at 8 (court may not consider inadmissible evidence). Likewise, two of the Ricciardelli affidavits (Exhibits E-2 and F) will not be considered because they are unsigned. *See Banks v. Deere*, 829 F.3d 661, 668 (8th Cir. 2016) (describing unsigned affidavits as "incompetent and inadmissible evidence" for purposes of summary judgment); *Cordero-Soto v. Island Fin., Inc.*, 418 F.3d 114, 120 (upholding summary judgment against plaintiff who relied on an unsigned affidavit). This leaves for consideration (i) counsels' affidavits, (ii) the one signed Ricciardelli affidavit, (iii) the one presented email thread, and (iv) any facts admitted by a party.

### a. Failure to Acknowledge and Act Promptly

An insurer may engage in unfair trade practices by "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claim arising under insurance policies." M.G.L. c. 176D, § 3(9)(b). The only evidence in the record reflecting the communications between the parties prior to the filing of the

lawsuit are the facts to which Sentry has admitted.  As the court has already laid those facts out in detail above, it now offers the following condensed timeline.

NEB provided its final loss figures to Sentry on January 11, 2021.  Sentry's adjuster responded on February 3 and requested further documentation, and NEB replied that Sentry already had what it needed.  NEB then contacted Sentry on March 3 to request a settlement offer, but Sentry did not respond.  NEB contacted Sentry yet again on April 13, this time threatening to issue a demand letter.  Sentry responded by asking for an extension until the end of April to make an offer.  In that vein, Sentry informed NEB on April 23 that it had retained Ricciardelli to analyze NEB's claim.  Six days later, on April 29, Ricciardelli requested further documentation from NEB.  NEB responded with its demand letter.

Although it is not difficult to understand how NEB might have found these exchanges to be unsatisfying overall, they fall well short of establishing that Sentry's delay in responding to NEB was unreasonable.  To begin, 23 days passed between NEB's finalized claim on January 11 and Sentry's response on February 3.  While this was perhaps not as prompt as NEB might have liked, it was still reasonably prompt. *See Forcucci v. U.S. Fid. And Guar. Co.*, 11 F.3d 1, 2 (1st Cir. 1993) (accepting lower court's conclusion that "31 days was reasonably prompt as a matter of law").  Moreover, Sentry appeared very much engaged in the settlement

process at that point, informing NEB that it needed more information to resolve the claim.  Further, there is no evidence in the record that NEB provided Sentry with any additional information between February 3 and the day NEB commenced this action, providing a plausible explanation for Sentry's failure to present NEB with a settlement figure.[8]  Indeed, there is no evidence in the record as to what documentation NEB gave to Sentry before filing this lawsuit, if any, or how NEB arrived at its claimed loss figures.

NEB claims that Sentry already had the information it needed to resolve the claim on February 3, but it offers no evidence to support that contention.  Sentry's delay in resolving the claim to NEB's satisfaction can hardly be seen as unreasonable if Sentry did not have the documentation that it legitimately needed to resolve NEB's claim.  *See Vasconcellos v. Arbella Mut. Ins. Co.*, 67 Mass. App. Ct. 277, 283 (2006) (finding six-month delay was not unreasonable where claimant had not provided insurer with required information).  Because NEB has not adduced any evidence that Sentry had the information it needed or that Sentry was not being truthful when it said it needed more information, NEB cannot on this record establish that Sentry's delay was unreasonable.

---

[8] The scant evidence the plaintiff puts forward, namely, the post-complaint emails, suggests that Sentry still had not provided Ricciardelli with the information he requested as of September 17, 2021, more than two months after this action was commenced.  (Dkt. No. 28-1, pp. 12-13).

**b.   Failure to Adopt and Implement Reasonable Standards**

An insurer may also incur liability by "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies."   M.G.L. c. 176D, § 3(9)(c).   This provision does not figure here where the record is completely devoid of evidence regarding Sentry's policies or standards for investigating claims.   Given the dearth of such evidence, NEB cannot prove that Sentry failed to adopt and implement reasonable standards.

**c.   Failure to Settle**

Finally, an insurer may not "[f]ail[] to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."   M.G.L. c. 176D, § 3(9)(f).   Liability in this sense "encompasses both fault and damages."   *Clegg v. Butler*, 424 Mass. 413, 421 (1997).   "Liability is not 'reasonably clear' if there is . . . a 'good faith disagreement' over the amount of damages."   *Chiulli v. Liberty Mut. Ins., Inc.*, 97 Mass. App. Ct. 248, 256 (2020) (quoting *Bobick v. U.S. Fid. & Guar. Co.*, 439 Mass. 652, 660 (2003)).

Sentry argues that NEB's damages have never been reasonably clear in this case.   Although NEB has consistently claimed a loss over $700,000, Sentry asserts that NEB has never provided sufficient documentation to justify its figures.   Further, Sentry

14

was unable to make its own loss calculation because NEB did not provide the information Sentry needed.  NEB argues that its damages have been reasonably clear since January 11, 2021, notwithstanding Sentry's delays and repeated requests for more information.

As previously discussed, none of the evidence in the record offers any insight into how NEB calculated its loss amount or what supporting documentation NEB provided to Sentry.  At best, the evidence NEB offers shows that some of the documentation Ricciardelli requested was not relevant due to the unique nature of the A-30 truck.  *See* (Dkt. No. 28-1, pp. 5-7).  Even assuming, though, that those requests were irrelevant, there is no evidence that NEB explained why they were irrelevant to Sentry or Ricciardelli prior to an email NEB's counsel sent to Ricciardelli on January 7, 2022, about six months after the lawsuit had been filed.  *See* (*id.* at p. 5).  Indeed, the fact that Ricciardelli continued making the requests as late as December 22, 2021, again, after the lawsuit had already been filed, suggests that he had not yet received any such explanations and continued to believe that he needed additional information.  *See* (*id.* at p. 6).  In short, nothing in the record suggests that it was reasonably clear when NEB brought suit in July 2021 that NEB's loss figures were correct or that Sentry refused to acknowledge those figures in bad faith. If anything, the record suggests that Sentry still had legitimate questions about NEB's damages in December 2021, if not later.

Presented with this evidence, no reasonable factfinder could conclude that NEB's damages were so reasonably clear as of the date NEB filed this suit that Sentry's failure to settle the claim evidenced bad faith or unfair conduct.[9]

In sum, NEB has failed to marshal sufficient evidence that would permit a rational factfinder to conclude that Sentry engaged in unfair trade practices in investigating or failing to settle NEB's claim.  Sentry therefore is entitled to judgment.

## IV.  **Conclusion**

For the foregoing reasons, the defendant's motion for summary judgment is ALLOWED.


So ordered.                        /s/ Donald L. Cabell
                                   DONALD L. CABELL, U.S.M.J.

DATED:  January 24, 2023

---

[9] Sentry contends that the extent of NEB's damages remains unclear to this day.  The court makes no finding on that point.